**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SOUTHERN DIVISION**

Colibri Heart Valve LLC,
Plaintiff,
v.
Medtronic CoreValve LLC,
Defendant.

Case No.: 8:20-cv-00847-DOC-JDE

# FINAL PRETRIAL CONFERENCE ORDER

**Judge: Hon. David O. Carter**

**Date: January 24, 2021**
**Time: 8:30 a.m. PT**
**Courtroom: 9D**

Following pretrial proceedings, pursuant to Federal Rule of Civil Procedure 16 and Local Rule 16, IT IS ORDERED:

1. The parties are:

a. Plaintiff Colibri Heart Valve LLC; and

b. Defendant Medtronic CoreValve LLC.

Medtronic has been served and has appeared. There are no other parties named in the pleadings.

The pleadings that raise the issues are:

a. Colibri's First Amended Complaint (Dkt. 30); and

b. Medtronic's Answer to Colibri's First Amended Complaint (Dkt. 114).

Federal jurisdiction and venue are invoked upon the following grounds:

a. Colibri asserts claims arising under the patent laws of the United States, 35 U.S.C. § 1, et seq. Colibri owns U.S. Patent No. 8,900,294 ("the '294 patent"). The Court has federal jurisdiction over such claims pursuant to 28 U.S.C. §§ 1331 and 1338(a). Federal jurisdiction is not disputed.

b. Colibri asserts venue is proper in the Central District of California under 28 U.S.C. §§ 1391(b) and 1400(b) because Medtronic resides in this District and a substantial part of the alleged acts of infringement occurred in this District. Venue is not disputed.

2. The trial is estimated to take five to six trial days.

3. The trial is to be a jury trial, although some of the remedies are equitable and for determination by the Court.

At least seven (7) days prior to the trial date the parties shall file and serve by e-mail personal delivery: (a) proposed jury instructions as required by L.R. 51-1 and (b) any special questions requested to be asked on voir dire.

4. The following facts are admitted and require no proof: see Appendix A.

5. The following facts, though stipulated, shall be without prejudice to any evidentiary objection: none.

6. The following claims and defenses will be presented at trial:

**Plaintiff (Colibri):**

(a) Colibri plans to pursue the following claims against Medtronic:

Claim 1: Induced infringement of claims 1–3 of the ’294 patent under 35 U.S.C. § 271(b).

Claim 2: Willful infringement of the ’294 patent.

Claim 3: Damages, costs, and fees under 35 U.S.C. § 284.

Claim 4: A finding of exceptionality under 35 U.S.C. § 285 and an award of reasonable attorney fees.[1]

(b) The elements required to establish Colibri’s claims are:

Claim 1 Elements:

**Colibri’s position:**

Medtronic is liable for induced infringement if Colibri proves by a preponderance of the evidence that Medtronic induced another to directly infringe an asserted claim either literally or under the doctrine of equivalents. To prove that Medtronic is liable for inducing infringement, Colibri must prove by a preponderance of the evidence that (1) the acts carried out by Medtronic’s end users of the accused products directly infringe an asserted claim; (2) Medtronic took action that was intended to cause and led to the infringing acts by Medtronic’s end users; and (3) Medtronic was aware of the asserted patent and knew that the acts, if taken, would constitute infringement of the asserted patent, or that Medtronic believed there was a high probability that the acts by its end users would infringe an asserted patent and took deliberate steps to avoid learning of that infringement. To show direct

[1] Because the ’294 patent expired on January 4, 2022, Colibri no longer seeks an ongoing royalty for Medtronic’s infringement.

infringement by Medtronic's end users, Colibri must prove by a preponderance of the evidence that end users perform all steps of an asserted claim.

Under the doctrine of equivalents, Medtronic's end users directly infringe a claim if the end users perform steps that literally meet or are equivalent to each and every element of the claim. A step is equivalent to a claim element that is not met literally if a person having ordinary skill in the field of technology of the patent would have considered the differences between them to more likely than not be "insubstantial" or would have found that the action: (1) performs substantially the same function (2) in substantially the same way (3) to achieve substantially the same result as the claim element.

**Medtronic's position:**

Medtronic is liable for induced infringement if Colibri proves by a preponderance of the evidence that Medtronic induced another to directly infringe an asserted claim either literally or under the doctrine of equivalents. To prove that Medtronic is liable for inducing infringement, Colibri must prove by a preponderance of the evidence that: (1) the acts carried out by Medtronic's end users of the accused products directly infringe each and every limitation of an asserted claim; (2) Medtronic took action during the time that the asserted patent was in force that was intended to cause and led to the infringing acts by Medtronic's end users; (3) Medtronic was aware of the asserted patent at the relevant time; and (4) Medtronic knew that the acts, if taken, would constitute infringement of the asserted patent. If Medtronic was aware of the patent, but believed that the acts it encouraged did not infringe that patent, Medtronic cannot be liable for inducement. Rather, in order to find inducement of infringement, Medtronic must have specifically intended the users to infringe the patent. To show direct infringement by Medtronic's end users, Colibri must prove by a preponderance of the evidence that end users perform all steps of an asserted claim.

For the alleged underlying act of direct infringement by Medtronic's end users, Colibri must prove by a preponderance of the evidence that: (1) Colibri owns the asserted patent and has the right to sue for its infringement; (2) customers used Medtronic's products in the specific way that Medtronic directs, and such use practices each and every limitation of each asserted claim; (3) said end users' use of Medtronic's products in the infringing manner was done without Colibri's authorization during the time the asserted patent was in force. For any aspect of underlying infringement alleged under the doctrine of equivalents, Medtronic's end users directly infringe a claim if the end users perform steps that literally meet or are equivalent to each and every element of the claim. A step is equivalent to a claim element if it is insubstantially different than the claim element. One way of showing that a step is an equivalent of a claimed element is to show that it (1) performs substantially the same function (2) in substantially the same way (3) to achieve substantially the same result as the claim element. Colibri's doctrine of equivalents case is limited to the "pushing out the pusher member from the moveable sheath" claim limitation of claim 1 of the '294 patent.

<u>Claim 2 Elements</u>:

**Colibri's position:**

To show that Medtronic's infringement is willful, Colibri must prove by a preponderance of the evidence that Medtronic knew of the asserted patent and Medtronic's infringement was intentional, egregious, willful, wanton, malicious, bad faith, deliberate, consciously wrongful, or flagrant.

**Medtronic's position:**

To show that Medtronic's infringement is willful, Colibri must prove by a preponderance of the evidence that: (1) Medtronic knew of the asserted patent; (2) Medtronic intentionally caused its customers to infringe the asserted claims of the asserted patent; and (3) Medtronic's infringement was intentional, egregious, willful,

wanton, malicious, bad faith, deliberate, consciously wrongful, or flagrant. Factors for consideration in establishing this element include:

- Whether or not the alleged infringer acted consistently with the standards of behavior for its industry;
- Whether or not the alleged infringer intentionally copied a product of the patent holder that is covered by the patent;
- Whether or not the alleged infringer reasonably believed it did not infringe or that the patent was invalid;
- Whether or not the alleged infringer made a good-faith effort to avoid infringing the patent, for example, whether the alleged infringer attempted to design around the patent; and
- Whether or not the alleged infringer tried to cover up its infringement.

Claim 3 Elements:

**Colibri's position:**

Colibri must establish the amount of its damages by a preponderance of the evidence. Colibri seeks a reasonable royalty, which is defined as the amount of money that Colibri and Medtronic would have agreed to in a hypothetical negotiation taking place at a time just prior to when infringement first began.

If Colibri proves that Medtronic's infringement was willful, the Court may award increased damages of up to three times the amount of damages found or assessed.

If Colibri is the prevailing party in this case, then Colibri is entitled to interest and costs as fixed by the Court.

**Medtronic's position:**

Colibri must establish that it is entitled to damages and the amount of its damages by a preponderance of the evidence. Colibri seeks a reasonable royalty, which is defined as the amount of money that Colibri and Medtronic would have

agreed to in a hypothetical negotiation taking place at a time just prior to when infringement first began. Colibri must prove the amount of damages to a reasonable degree of certainty. In making the required showing as to Plaintiff's claim for damages for Medtronic's alleged induced infringement, Plaintiff must establish the following:

- The amount of damages that is attributable to and that is adequate to compensate for Medtronic's alleged induced infringement to a reasonable degree of certainty.
- If seeking a reasonable royalty, the amount of money that Plaintiff and Medtronic would have agreed upon as a fee for using the invention at a hypothetical negotiation taking place at a time just prior to when infringement first began.
- If basing its damages claim on the application of a royalty rate to a sales revenue base, the portion of that revenue base that constitutes sales of accused products as to which third-parties actually performed each and every step of the claimed method and were intentionally induced by Medtronic to do so.
- The smallest salable patent-practicing unit.
- The incremental value that the inventive features of the '294 patent contribute to the accused products when used by third-parties to practice the claimed method because of Medtronic's alleged inducement of infringement.

If Colibri proves that Medtronic's infringement was willful, the Court may award increased damages of up to three times the amount of damages found or assessed if the Court concludes that Medtronic's conduct was willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate. In making the showing as to Plaintiff's claim for damages for Medtronic's

alleged willful infringement, Plaintiff must establish the following:

- That Medtronic's conduct was willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate.
- The appropriate amount of any alleged damages, which may not exceed three times the amount of actual damages found or assessed.

If Colibri is the prevailing party in this case, then Colibri is entitled to interest and costs as fixed by the Court.

Claim 4 Elements: An exceptional case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated.

(c) In brief, the key evidence Colibri relies on for each claim is:

Claim 1 Evidence:

- Evidence showing that the Evolut R, Evolut Pro, and Evolut Pro+ systems meet the claim limitations requiring "a replacement heart valve device and a delivery implantation system," including a heart valve device that includes "a valve residing entirely within an inner channel of the stent member and attached to a proximal portion of the stent member." This evidence will include Medtronic's regulatory applications and documents, the systems themselves, as well as the testimony of witnesses and experts.
- Evidence showing that users of the Evolut R, Evolut Pro, and Evolut Pro+ systems perform a method that includes "after the advancing step, partially deploying a distal portion of the replacement heart valve device within the patient by pushing out the pusher member from the moveable sheath to expose the distal portion of the replacement heart valve device" by practicing the cusp overlap

technique, including, but not limited to, Medtronic's training materials, instructions for use, advertisements, and regulatory documents; expert testimony; and testimony from fact witnesses.

- Evidence showing that Medtronic induces users to perform the cusp overlap technique including, but not limited to, Medtronic's training materials, instructions for use, advertisements, and regulatory documents; expert testimony; and testimony from fact witnesses.
- Evidence showing that Medtronic induces infringement under the doctrine of equivalents. This will include evidence showing that the users of the Evolut R, Pro, and Pro+ systems apply oppositional force to maintain the position of the replacement heart valve device during deployment while simultaneously retracting the moveable sheath; that Medtronic induces users to perform this method; and that applying oppositional force, active repositioning, and the cusp overlap technique are each insubstantially different and include substantially the same function, way, and result as "partially deploying a distal portion of the replacement heart valve device within the patient by pushing out the pusher member from the moveable sheath to expose the distal portion of the replacement heart valve device."
- Evidence showing that, to a person of skill in the art, the method of active repositioning includes substantially the same function, way, and result as "partially deploying a distal portion of the replacement heart valve device within the patient by pushing out the pusher member from the moveable sheath to expose the distal portion of the replacement heart valve device."
- Evidence showing that to a person of skill in the art, the cusp overlap

technique includes substantially the same function, way, and result as "partially deploying a distal portion of the replacement heart valve device within the patient by pushing out the pusher member from the moveable sheath to expose the distal portion of the replacement heart valve device."

- Evidence showing that the leaflets of the accused products are attached to the proximal portion of the stent. This evidence will include Medtronic's regulatory applications and documents, as well as the testimony of witnesses and experts.

Claim 2 Evidence:

- Evidence showing that Colibri disclosed to Medtronic the asserted patent as well as the patent application leading to the asserted patent[2]; Colibri's meetings with Medtronic; and Medtronic's evaluations of Colibri's asserted patent. This evidence will include documents showing communications, correspondence, and presentations between Medtronic and Colibri; evidence of Medtronic's accessing Colibri's data room; and witness testimony.

Claim 3 Evidence:

- Evidence, including testimony by fact witnesses and experts, regarding the hypothetical license negotiation between Colibri and Medtronic to license the asserted patent in exchange for a reasonable royalty at the time of initial infringement. This will include evidence regarding agreements to which Colibri or Medtronic are a party and documents reflecting Medtronic's sales, revenues, and expected

[2] Medtronic's position: Medtronic objects to any evidence that Colibri disclosed to Medtronic the patent application leading to the '294 patent prior to the patent's issuance. This issue is covered by Medtronic MIL 3 (Dkt. 292 at 4). Colibri's position: This evidence provides relevant context to Medtronic's knowledge of the '294 patent and willful infringement.

profits of the accused products. Colibri will also present evidence rebutting Medtronic's arguments on the availability and acceptability of alleged non-infringing alternatives to the asserted patent.

- In support of its claims for enhanced damages, evidence showing that Colibri disclosed to Medtronic the asserted patent as well as the patent application leading to the asserted patent[3]; Colibri's meetings with Medtronic; and Medtronic's evaluations of Colibri's asserted patent. This evidence will include documents showing communications, correspondence, and presentations between Medtronic and Colibri; evidence of Medtronic's accessing Colibri's data room[4]; and witness testimony. Colibri will also present evidence of Medtronic's efforts, or lack thereof, to design around the asserted patent or otherwise avoid infringement; and Medtronic's litigation tactics and the consequent burden imposed on Colibri.

Claim 4 Evidence:

- Evidence in support of Colibri's claims of infringement and willful infringement, as well as evidence of Medtronic's efforts, or lack thereof, to design around the asserted patent or otherwise avoid infringement; Medtronic's litigation tactics and the consequent burden imposed on Colibri; and Medtronic's parallel proceedings in the PTAB challenging Colibri's patent.

---

[3] Medtronic's position: As previously noted, Medtronic MIL 3 covers Medtronic's objections to evidence that Colibri disclosed to Medtronic the patent application leading to the '294 patent prior to the patent's issuance. Colibri's position: This evidence provides relevant context to Medtronic's knowledge of the '294 patent and willful infringement.

[4] Medtronic's position: Medtronic objects to evidence or argument regarding access logs for the Colibri data room, as explained in MIL 5 (Dkt. 292 at 7). Colibri's position: This evidence provides relevant context to Medtronic's knowledge of the '294 patent and willful infringement.

**Defendant (Medtronic):**

(a) Medtronic plans to pursue the following affirmative defenses:

Affirmative Defense 1: To the extent that non-infringement must be asserted as an affirmative defense, non-infringement of claims 1–3 of the '294 patent under 35 U.S.C. § 271(b), either literally or under the doctrine of equivalents.

Affirmative Defense 2: Invalidity of claims 1–3 of the '294 patent under 35 U.S.C. §§ 102 and 103.

Affirmative Defense 3: Colibri's claims for damages and costs are limited under 35 U.S.C. §§ 286 and 288.

(b) The elements required to establish Medtronic's affirmative defenses are:

Affirmative Defense 1 Elements:

**Medtronic's position:**

Although plaintiff bears the burden of proving infringement, to the extent non-infringement is an affirmative defense, Medtronic prevails on this defense if Colibri fails to prove by a preponderance of the evidence that Medtronic induced another to directly infringe an asserted claim either literally or under the doctrine of equivalents. To prove that Medtronic is liable for inducing infringement, Colibri must prove by a preponderance of the evidence that: (1) the acts carried out by Medtronic's end users of the accused products directly infringe each and every limitation of an asserted claim; (2) Medtronic took action during the time that the asserted patent was in force that was intended to cause and led to the infringing acts by Medtronic's end users; (3) Medtronic was aware of the asserted patent at the relevant time; and (4) Medtronic knew that the acts, if taken, would constitute infringement of the asserted patent. If Medtronic was aware of the patent, but Medtronic establishes that it believed that the acts it encouraged did not infringe that patent, Medtronic cannot be liable for inducement. Rather, in order to find inducement of infringement, Colibri must prove that Medtronic specifically intended the users to infringe the patent and a showing

by Medtronic to the contrary would thus preclude a finding of inducement of infringement. To show direct infringement by Medtronic's end users, Colibri must prove by a preponderance of the evidence that end users perform all steps of an asserted claim.

For the alleged underlying act of direct infringement by Medtronic's end users, Colibri must prove by a preponderance of the evidence that: (1) Colibri owns the asserted patent and has the right to sue for its infringement; (2) customers used Medtronic's products in the specific way that Medtronic directs, and such use practices each and every limitation of each asserted claim; (3) said end users' use of Medtronic's products in the infringing manner was done without Colibri's authorization during the time the asserted patent was in force. For any aspect of underlying infringement alleged under the doctrine of equivalents, Medtronic prevails on its affirmative defense if Colibri fails to prove by a preponderance of the evidence that end users of the accused Medtronic products directly infringe by the end users performing all of the claimed steps either literally or under the doctrine of equivalents. A step is equivalent to a claim element if it is insubstantially different than the claim element. One way of showing that a step is an equivalent of a claimed element is to show that it (1) performs substantially the same function (2) in substantially the same way (3) to achieve substantially the same result as the claim element. Colibri's doctrine equivalent case is limited to the "pushing out the pusher member from the moveable sheath" claim limitation of claim 1 of the '294 patent.

**Colibri's position:**

Medtronic is liable for induced infringement if Colibri proves by a preponderance of the evidence that Medtronic induced another to directly infringe an asserted claim either literally or under the doctrine of equivalents. To prove that Medtronic is liable for inducing infringement, Colibri must prove by a preponderance of the evidence that (1) the acts carried out by Medtronic's end users of the accused

products directly infringe an asserted claim; (2) Medtronic took action that was intended to cause and led to the infringing acts by Medtronic's end users; and (3) Medtronic was aware of the asserted patent and knew that the acts, if taken, would constitute infringement of the asserted patent, or that Medtronic believed there was a high probability that the acts by its end users would infringe an asserted patent and took deliberate steps to avoid learning of that infringement. To show direct infringement by Medtronic's end users, Colibri must prove by a preponderance of the evidence that end users perform all steps of an asserted claim.

Under the doctrine of equivalents, Medtronic's end users directly infringe a claim if the end users perform steps that literally meet or are equivalent to each and every element of the claim. A step is equivalent to a claim element that is not met literally if a person having ordinary skill in the field of technology of the patent would have considered the differences between them to more likely than not be "insubstantial" or would have found that the action: (1) performs substantially the same function (2) in substantially the same way (3) to achieve substantially the same result as the claim element.

Affirmative Defense 2 Elements: The asserted claims are presumed to be valid, and Medtronic has the burden of proving invalidity by clear and convincing evidence.

**Medtronic's position:**

To establish that the asserted claims are invalid as anticipated (35 U.S.C. § 102), Medtronic must prove by clear and convincing evidence, on a claim-by-claim basis, that all the requirements of each asserted claim are present in a single piece of prior art—either expressly or inherently—before the asserted claim's priority date.

Because Medtronic asserts that the publication of the grandparent application to the '294 patent anticipates the claims, Medtronic must show, in order to prevail on its section 102 defense based on that publication, that the '294 patent cannot claim priority to its grandparent application, such that the publication of the grandparent

application is prior art. Upon Medtronic establishing a *prima facie* case that Colibri is not entitled to claim priority, Colibri bears the burden to show the '294 patent is entitled to the claimed priority date. To claim priority to an earlier application, there must be written-description support for each claim limitation in the earlier application. An earlier application does not provide written description support if (1) a person having ordinary skill in the art reading the original patent applications would have recognized that it does not describe the full scope of the asserted claims of the asserted patents and thus that the named inventor(s) did not actually possess the full scope of the asserted claims at the time of the filing of these applications; (2) a person having ordinary skill in the art reading the '294 patent would have recognized that it does not describe the full scope of the asserted claims of the asserted patents and that the named inventor(s) did not actually possess the full scope of the claimed inventions; or (3) a person having ordinary skill in the art reading the original patent application would not have been enabled at the time to make and use the full scope of the invention.

To establish that the asserted claims are invalid as obvious (35 U.S.C. § 103), Medtronic must prove by clear and convincing evidence, on a claim-by-claim basis, that the claimed invention would have been obvious to persons having ordinary skill in the art at the time the original application was filed. A claim is obvious if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention. This showing can be made by, for example, establishing that a person having ordinary skill in the art would have been motivated to combine the teachings of prior art references to achieve the claimed invention and would have had a reasonable expectation success in doing so. Medtronic must also prove that the objective indicia of commercial success does not support or suggest that the asserted claims are non-obvious.

**Colibri's position:**

To establish that the asserted claims are invalid as anticipated (35 U.S.C. § 102), Medtronic must prove by clear and convincing evidence, on a claim-by-claim basis, that all the requirements of each asserted claim are present in a single piece of prior art before the asserted claim's priority date. Because Medtronic asserts that the grandparent application to the '294 patent anticipates the claims, Medtronic must show that the '294 patent cannot claim priority to its grandparent application, such that the earlier application is prior art. To claim priority to an earlier application, there must be written-description support for each claim limitation in the earlier application. The written description must reasonably convey to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date.

To establish that the asserted claims are invalid as obvious (35 U.S.C. § 103), Medtronic must prove by clear and convincing evidence, on a claim-by-claim basis, that the claimed invention would have been obvious to persons having ordinary skill in the art at the time the original application was filed. A claim is obvious if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention. This requires showing that a person having ordinary skill in the art would have been motivated to combine the teachings of prior art references to achieve the claimed invention and would have had a reasonable expectation success in doing so. Objective indicia of non-obviousness, such as commercial success of the invention, long felt and unresolved need, failure of others, skepticism by experts, industry praise, teaching away, and copying, may be evidence that the invention is non-obvious.

Affirmative Defense 3 Elements:

**Medtronic's position:**

Colibri is not entitled to recover damages for any infringement committed six

years prior to the filing of the Complaint. A limitation on damages under 35 U.S.C. § 286 requires proof of the date of filing of the complaint in the action. Plaintiff is statutorily barred from recovery of damages extending beyond a six-year period from the date of filing. A limitation on costs under 35 U.S.C. § 288 requires proof that at least one claim of the '294 patent is invalid and that Plaintiff did not enter a disclaimer of the invalid claim at the Patent and Trademark Office before the commencement of the suit. If a claim of the '294 patent is invalid, Colibri may maintain an action for infringement of the remaining valid claim(s), but shall recover no costs unless a disclaimer of the invalid claim was entered at the Patent and Trademark Office before the commencement of the suit.

**Colibri's position:**

Colibri is not entitled to recover damages for any infringement committed six years prior to the filing of the Complaint. If a claim of the '294 patent is invalid, Colibri may maintain an action for infringement of the remaining valid claim(s), but shall recover no costs unless a disclaimer of the invalid claim was entered at the Patent and Trademark Office before the commencement of the suit.

(c) In brief, the key evidence Medtronic relies on for each affirmative defense is:

Affirmative Defense 1 Evidence: Although plaintiff bears the burden of proving infringement, to the extent non-infringement is an affirmative defense, Medtronic will rely on evidence establishing that end-users of the accused Medtronic products do not practice the claimed steps of the '294 patent, including at least the steps in claim 1 of: "obtaining a replacement heart valve device and a delivery and implantation system: the replacement heart valve device including: . . . "a valve residing entirely within an inner channel of the stent member and attached to a proximal portion of the stent member"; "after the advancing step, partially deploying a distal portion of the replacement heart valve device within the patient by pushing

out the pusher member from the moveable sheath to expose the distal portion of the replacement heart valve device"; and "after the restraining step, recovering the distal portion of the replacement heart valve device within the moveable sheath that was exposed in order to address a problem with the position of the replacement heart valve device within the patient." This evidence will include: the '294 patent, the file history of the '294 patent, patents related to the '294 patent, and the file histories of those related patents; the Court's claim constructions; physical samples and pictures of the accused products; design and design-related documents pertaining to the accused products evidencing their design, structure, function, and operation; training materials and instructions for use; test results; testimony from fact witnesses, including deposition designations of relevant deponents; and expert testimony.

Medtronic also will rely on evidence establishing that it does not induce allegedly infringing acts, does not know that any end-user is infringing any asserted claim, does not believe that that any end-user is infringing any asserted claim and does not specifically intend any end-user to infringe any asserted claim. This evidence will include: the '294 patent, the file history of the '294 patent, patents related to the '294 patent, and the file histories of those related patents; physical samples and pictures of the accused products and of the preceding CoreValve and Medtronic product designs from which they evolved; design and design-related documents pertaining to the accused products and the preceding CoreValve and Medtronic product designs from which they evolved evidencing their design, structure, function, and operation; training materials and instructions for use; test results; evidence of what was known in the art at the time of the alleged inducement (including prior art patents and publications, prior art patent applications and prior art products); documentary evidence relating to the parties' pre-suit communications and related actions after the issuance of the '294 patent; testimony from fact

witnesses, including deposition designations of relevant deponents; and expert testimony.

Medtronic also will rely on evidence establishing that it does not willfully induce any allegedly infringing acts: the ’294 patent; physical samples and pictures of the accused products and of the preceding CoreValve and Medtronic product designs from which they evolved; design and design-related documents pertaining to the accused products and the preceding CoreValve and Medtronic product designs from which they evolved evidencing their design, structure, function, and operation; training materials and instructions for use; test results; evidence of what was known in the art at the time of the alleged inducement (including prior art patents and publications, prior art patent applications and prior art products); documentary evidence relating to the parties’ pre-suit communications and related actions after the issuance of the ’294 patent; testimony from fact witnesses, including deposition designations of relevant deponents; and expert testimony.

Affirmative Defense 2 Evidence: Medtronic will rely on the following evidence to establish its allegations with respect to its claim that the asserted claims are invalid: the ’294 patent, the file history of the ’294 patent, patents related to the ’294 patent, and the file histories of those related patents; prior art publications, devices, documents, and any other prior art materials identified in Medtronic’s exhibit list; discovery responses of both parties; testimony from fact witnesses, including deposition designations of relevant deponents; and expert testimony.

Affirmative Defense 3 Evidence: Medtronic will rely on the following evidence to establish its allegations with respect to its claim that Colibri’s claims for damages and costs are limited under 35 U.S.C. §§ 286 and 288: the ’294 patent and the file history of the ’294 patent; the filing date of Plaintiff’s complaint against Medtronic; evidence cited in support of Medtronic’s invalidity defense; testimony

from fact witnesses, including deposition designations of relevant deponents; and expert testimony.

7. In view of the admitted facts and the elements required to establish the claims and affirmative defenses, the following issues remain to be tried: each element of the above-listed claims and defenses.

8. All discovery is complete except as requested in Medtronic's pending Motion to Strike Portions of Supplemental Expert Report of Christopher Vellturo, Ph.D (Dkt. 278). Colibri opposes Medtronic's motion to strike.

9. All disclosures under Rule 26(a)(3) have been made.

The joint exhibit list of the parties has been filed under separate cover as required by L.R. 16-6.1 (Dkt. 284). Unless all parties agree that an exhibit shall be withdrawn, all exhibits will be admitted upon being introduced through a knowledgeable witness at trial without objection at trial, except those exhibits listed in Appendix B.

Exhibits to be used solely for cross-examination do not need to be included on a party's exhibit list.

A party will provide exhibits to be used in connection with direct examination by 6:00 p.m. the day before their intended use, and objections will be provided no later than 8:00 p.m. the night before their intended use. The parties shall meet and confer to resolve any objections by 10:00 p.m. that same evening. If good faith efforts to resolve the objections fail, the party objecting to the exhibits shall bring its objections to the Court's attention prior to the witness being called to the witness stand. Failure to comply with these procedures, absent an agreement by the parties, will result in waiver of the use of an exhibit or waiver of objection to the exhibit.

If a party intends to use an exhibit during its opening statement,[5] the party shall disclose the exhibit(s) by 8:00 p.m. two nights before opening statements. If the opposing party objects to the use of any such exhibit(s), it will provide notice of that objection by 12:00 p.m. (noon) the day before opening statements. The parties shall meet and confer by 6:00 p.m. that same day.

The parties will exchange demonstratives to be used in opening statements by 8:00 p.m. two nights before opening statements. If the opposing party objects to the use of any such demonstratives, it will provide notice of that objection by 12:00 p.m. (noon) the day before opening statements. The parties shall meet and confer by 6:00 p.m. that same day.

A party will provide demonstrative exhibits to be used in connection with direct examination by 6:00 p.m. the night before their intended use, and objections will be provided no later than 8:00 p.m. the night before their intended use. The parties shall meet and confer to resolve any objections by 10:00 p.m. that same evening.

The party seeking to use a demonstrative will provide a color representation of the demonstrative to the other side in PDF form. However, for video or animations, the party seeking to use the demonstrative will provide it to the other side on a DVD or CD or by electronic transfer. For irregularly sized physical exhibits, the party seeking to use the demonstrative will provide a color representation as an 8.5" x 11" PDF copy of the exhibit, accompanied by a disclosure of the demonstrative's actual size. For PowerPoint slides that are "built" by showing multiple slides, a party need only disclose the final or completed slide and need not disclose all individual slides that are used to build the final or completed slide, provided that what is disclosed

[5] Medtronic's position: Medtronic submits that all exhibits to be used during opening statements must be disclosed according to the language in this paragraph.
Colibri's position: Colibri submits that only exhibits for which admissibility has not been stipulated and to which the other party has objected must be disclosed according to the language in this paragraph.

contains all substantive content that will be shown to the jury. This provision does not apply to demonstratives created during testimony, demonstratives created live in Court, or demonstratives to be used for cross-examination, none of which need to be provided to the other side in advance of their use. In addition, blow-ups or highlights of exhibits or parts of exhibits or testimony are not required to be provided to the other side in advance of their use.

If good faith efforts to resolve objections to demonstrative exhibits fail, the objecting party shall bring its objections to the Court's attention prior to the opening statements or prior to the applicable witness being called to the witness stand. Failure to comply with these procedures, absent an agreement by the parties, will result in waiver of the use of an exhibit or waiver of objection to the exhibit.

10. Witness lists of the parties have been filed with the Court.

Only the witnesses identified in the lists will be permitted to testify (other than solely for impeachment).

A party will identify by email to the opposing party the witnesses it intends to call, and whether those witnesses will be called live or by deposition, by 8:00 p.m. two calendar days before such witnesses will be called to testify. For example, if the party expects to conduct the examination on Thursday, notice should be given to the opposing party by 8:00 p.m. on Tuesday. The other party shall identify any objections to such witnesses by 8:00 p.m. the following day, and the parties shall meet and confer to resolve any objections by 10:00 p.m. that same evening. If good faith efforts to resolve any objections fail, the party objecting shall bring its objections to the Court's attention prior to the witness being called to the witness stand. Each party shall update its list of expected witnesses and exhibits by 8:00 p.m. at the end of each trial day.

The parties will confer nightly to update opposing counsel as to the expected day that the party intends to complete its presentation of evidence.

Subject to the process described in this paragraph, any witness who will be made available to testify live in Court will be called live only in the case-in-chief of the party with whom the witness is affiliated. This agreement does not limit any party's ability to use the otherwise admissible deposition testimony (including video) of any witness at any time, even if that same witness will also testify live or has already testified live.[6] If Colibri does not call a witness whom Colibri identified as expecting to call live, Medtronic can call that person by deposition testimony in their case. If Medtronic does not call a witness whom Medtronic identified as expecting to call live, Colibri can call that person by deposition in its rebuttal case.

Fact witnesses who will testify in Court, including rebuttal witnesses, will be excluded from the courtroom except during their own testimony, and they shall not review the transcripts of the trial testimony of other fact witnesses. This provision does not apply to one designated corporate representative for Plaintiff (whom the parties stipulate will be Joseph Horn or David Fish) and one designated corporate representative for Defendant (whom the parties stipulate will be Kshitija Garde or Mark Casley), who will be permitted to attend the entire trial (subject to exclusion as appropriate for certain highly confidential information). Additionally, retained expert witnesses who have submitted disclosures under Federal Rule of Civil Procedure 26(a)(2)(B) may attend the entire trial and/or review transcripts of openings and trial testimony.

Each party intending to present evidence by way of deposition testimony has marked such depositions in accordance with L.R. 16-2.7. For this purpose, the following depositions shall be lodged with the Clerk as required by L.R. 32-1:

(a) Deposition of Mark Casley, dated February 3, 2021;

[6] Colibri's position: Colibri proposes to further provide that this agreement also does not limit Colibri's ability to re-call any live witness in its rebuttal case.
Medtronic's position: Medtronic submits that Colibri's proposed language should be qualified such that the determination remains at the Court's discretion, and subject to Medtronic's right to object to calling any such rebuttal witness.

(b) Deposition of Sean Edman, dated February 26, 2021;

(c) Deposition of Richard D. Fish, M.D., dated January 8, 2021;

(d) Deposition of Kshitija Garde, dated February 5, 2021;

(e) Deposition of Kshitija Garde, dated May 19, 2021;

(f) Deposition of Gary A. Gratson, dated February 23, 2021;

(g) Deposition of Joseph Horn, dated February 18, 2021;

(h) Deposition of Gregory Larkin, dated February 19, 2021;

(i) Deposition of Francisco Lopez-Jimenez, M.D., dated February 10, 2021;

(j) Deposition of Brett Madden, dated February 25, 2021;

(k) Deposition of Carlos Mejia, dated February 5, 2021;

(l) Deposition of David Paniagua, M.D., dated January 7, 2021;

(m) Deposition of Eric Schauble, dated February 15, 2021;

(n) Deposition of Manuel Valcarcel, dated February 26, 2021;

(o) Deposition of Bruce Wagner, dated February 26, 2021; and

(p) Deposition of Mark Yaskanin, dated February 23, 2021.

Medtronic objects to Colibri's affirmative presentation of testimony by deposition of the following witnesses:

(a) Joseph Horn;

(b) David Paniagua, M.D.; and

(c) Richard D. Fish, M.D.

Colibri reserves the right to call Joseph Horn, Dr. David Paniagua, and Dr. Richard D. Fish by deposition consistent with the Federal Rules of Evidence and Federal Rule of Civil Procedure 32, for example, if the witnesses are unavailable due to the COVID pandemic.

Appendix C hereto shows the parties' respective objections to the presentation of testimony by deposition for each of the above witnesses.

This pretrial order contains the maximum universe of deposition designations, counter-designations, and objections to admission of deposition testimony; none of the foregoing shall be supplemented without approval of all parties or leave of the Court, on good cause shown.

The parties envision that less testimony will be presented by deposition than has been designated. No later than 8:00 p.m. five (5) calendar days before a party anticipates calling a witness by deposition, that party shall identify the portions of previously designated deposition testimony that will be presented for a witness to be presented by deposition. No later than 8:00 p.m. the following day (or four (4) calendar days before the witness will be called by deposition), the opposing party shall provide the counter-designations to be presented with the designated testimony, along with any objections to the designated testimony. No later than 6:00 p.m. the following day (or three (3) calendar days before the witness will be called by deposition), the party calling the witness will provide any objections to the counter-designations. The parties will thereafter meet and confer in good faith to resolve any remaining objections to the designated testimony. If there are objections that remain to be resolved, the party calling the witness by deposition shall, no later than 6:00 p.m. two (2) calendar days before the witness is to be called at trial, submit, on behalf of all parties: (i) a copy of the entire deposition testimony of the witness at issue, clearly highlighting the designations, counter-designations, and pending objections; (ii) any exhibit to be introduced with the deposition testimony if there remains a pending objection to that exhibit; and (iii) a cover letter clearly identifying the pending objections as well as a brief indication (i.e., no more than one sentence per objection) of the basis for the objection and the offering party's response to it. Failure to comply with these procedures, absent an agreement by the parties and approval by the Court, will result in waiver of the use of the deposition testimony or waiver of objection to the use of the deposition testimony.

All irrelevant and redundant material, including colloquy between counsel and objections, will be eliminated to the extent reasonably possible when the deposition is read or viewed at trial. When the witness is called to testify by deposition at trial, the party calling the witness shall provide the Court with two copies of the transcript of the designations and counter-designations that will be read or played. The parties will be charged for all time that elapses from the time the witness is called until the next witness is called, according to the proportions to be provided by the parties.

When a witness's deposition is played or the witness's prior testimony is read into evidence, all deposition designations and counter-designations from a single deposition or trial testimony will be introduced at trial together in the sequence in which the testimony originally occurred.

The offering party shall provide a copy of the edited video deposition to the other party as soon as any final rulings are obtained from the Court and the video editing has been completed and will use its best efforts to provide the video to the other party for review by 8:00 p.m. the day before the testimony is scheduled to be played in Court. In order to reduce the number of duplicative exhibits, where a deposition excerpt references a document by deposition exhibit number and that identical document was also marked as a different exhibit number for use at trial, a party may substitute the trial exhibit for the deposition exhibit.

11. The following law and motion matters and motions *in limine*, and no others, are pending or contemplated:

(a) Colibri's motions *in limine*:

- MIL 1: Any reference to, evidence, or argument that Colibri obtained litigation funding.
- MIL 2: Any disparaging statements or arguments about Colibri's or the inventors' trials involving animals.

- MIL 3: Any reference to, evidence, or argument that the inventors omitted or redacted information in declarations submitted to the Patent Office.

(b) Medtronic's motions *in limine*:

- MIL 1: Any evidence, argument, or suggestion that any limitation of the asserted claims is eligible to be satisfied by the doctrine of equivalents other than the "pushing out the pusher member from the moveable sheath" claim limitation, including any general statement to the effect that the asserted claims may be satisfied by the doctrine of equivalents.
- MIL 2: No evidence or argument regarding accused devices that are not actually used to practice every step of the claimed method, including the recovering step, including any evidence or argument that such products can be infringing or can be or are included in the revenue base for damages.
- MIL 3: No evidence or argument regarding communications between Medtronic and Colibri predating the issuance of the '294 patent.
- MIL 4: No evidence or argument regarding the prior litigation between Edwards and Medtronic.
- MIL 5: No evidence or argument regarding access logs for the Colibri Data Room.
- MIL 6: No questions that seek to elicit answers to which a party previously asserted the attorney-client privilege, the work product doctrine or the limitations of Rule 26(b)(4) as an objection, including any comments or suggestions regarding the prior assertion of the objection.

- MIL 7: No evidence or argument regarding unrelated litigations and investigations to which Medtronic was a party.
- MIL 8: No reference to or argument regarding the respective and relative sizes of Medtronic and Colibri.
- MIL 9: Any reference to, evidence, or argument concerning (1) any ruling by the Court other than the Court's claim constructions, (2) the Court's rationale for any ruling, including but not limited to why the '739 patent is no longer in the case, and (3) documents allegedly not produced during discovery.
- MIL 10: Any reference to or argument regarding the expert report drafting process or communications between an expert and counsel.

Additionally, the parties have met and conferred and have agreed to the following evidentiary preclusions at trial:

(a) No evidence or argument regarding any assertion of literal infringement of the "pushing out the pusher member from the moveable sheath" limitation based on any literal infringement theory other than the "cusp overlap" technique.

(b) No evidence or argument regarding Medtronic's non-assertion of an advice of counsel defense.

(c) No reference to enhanced damages or a potential attorneys' fee award.

(d) No reference to the size of the parties' law firms or the number of law firms or attorneys representing the parties.

(e) Any reference to, evidence, or argument revisiting the Court's claim constructions.

(f) Any expert opinion testimony not disclosed in expert reports or expert depositions, including but not limited to any expert opinion testimony by Mark Casley. For the avoidance of doubt, "expert opinion testimony" includes any analysis comparing the accused products to the asserted claims or as to the meaning of claim terms. Colibri and Medtronic disagree as to whether Mr. Casley's testimony includes any expert opinions.

(g) No evidence or argument concerning Medtronic's valuation, market capitalization, company-wide revenues, or company-wide profits.

(h) No evidence or argument regarding the filing, merits, or disposition of IPR2020-01453, unless Medtronic introduces evidence or argument regarding prior art that was previously raised by Medtronic and rejected by the PTAB during those proceedings.

12. Bifurcation of the following issues for trial is ordered: none.

13. Jury trial: Both parties timely demanded trial by jury. All the above-identified claims are triable to a jury except for: (1) Plaintiff's request for additional damages for Medtronic's alleged willful infringement; (2) Plaintiff's exceptional case claim under 35 U.S.C. § 285; and (3) Medtronic's cost limitations defense under 35 U.S.C. § 288.

14. Attorneys' fees: Both parties anticipate filing a motion requesting attorneys' fees pursuant to 35 U.S.C § 285 if deemed the prevailing party in this action.

15. The foregoing admissions having been made by the parties, and the parties having specified the foregoing issues remaining to be litigated, this Final

Pretrial Conference Order shall supersede the pleadings and govern the course of the trial of this cause, unless modified to prevent manifest injustice.

Dated: January 21, 2022

UNITED STATES DISTRICT JUDGE