# EXHIBIT A

| | |
|---|---|
| Mieke K. Malmberg (SBN 209992)<br>mmalmberg@skiermontderby.com<br>**SKIERMONT DERBY LLP**<br>633 West 5th Street, Suite 5800<br>Los Angeles, California 90071<br>Tel.: (213) 788-4500<br>Fax: (213) 788-4545<br><br>John M. Hughes (*pro hac vice*)<br>john.hughes@bartlitbeck.com<br>Joseph C. Smith, Jr. (*pro hac vice*)<br>joseph.smith@bartlitbeck.com<br>Meg E. Fasulo (*pro hac vice*)<br>meg.fasulo@bartlitbeck.com<br>**BARTLIT BECK LLP**<br>1801 Wewatta, Suite 1200<br>Denver, Colorado 80202<br>Tel.: (303) 592-3100<br>Fax: (303) 592-3140<br><br>*Attorneys for Plaintiff*<br>Colibri Heart Valve LLC<br><br>(*continued in signature block*) | Mark D. Fowler (SBN 124235)<br>mark.fowler@dlapiper.com<br>**DLA PIPER LLP (US)**<br>2000 University Avenue<br>East Palo Alto, California 94303-2250<br>T: (650) 833-2000 \| F: (650) 833-2001<br><br>Kathryn Riley Grasso (SBN 211187)<br>kathryn.riley@dlapiper.com<br>**DLA PIPER LLP (US)**<br>401 B Street, Suite 1700<br>San Diego, CA 92101<br>T: (619) 699-2700 \| F: (619) 699-2701<br><br>*Attorneys for Defendant*<br>Medtronic CoreValve LLC<br><br>(*continued in signature block*) |

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION – SANTA ANA

| | |
|---|---|
| Colibri Heart Valve LLC,<br><br>        Plaintiff,<br><br>    v.<br><br>Medtronic CoreValve LLC,<br><br>        Defendant. | Case No.: 8:20-cv-00847-DOC-JDE<br><br>**EXHIBIT A – [PROPOSED] JURY VERDICT FORM**<br><br>**Judge: Hon. David O. Carter**<br>**Technical Special Master: David Keyzer**<br><br>**Pre-Trial Jury Charge Conference: December 5, 2022**<br>**Trial Date: December 13, 2022** |

**VERDICT FORM**

When answering the following questions (which begin on the next page) and filling out this Verdict Form, please follow the directions provided throughout the form. Your answer to each question must be unanimous. Some of the questions contain legal terms that are defined and explained in detail in the Jury Instructions. Please refer to the Jury Instructions if you are unsure about the meaning or usage of any legal term that appears in the questions below.

We, the jury, unanimously agree to the answers to the following questions and return them under the instructions of the Court as the verdict in our case.

[Proposed] Jury Verdict Form

# COLIBRI'S PROPOSED JURY QUESTION NO. 1[1]

## INFRINGEMENT

Did Colibri prove by a preponderance of the evidence that Medtronic CoreValve induced infringement of the following claims of Colibri's asserted patent: U.S. Patent No. 8,900,294 ('294 patent), either literally or under the doctrine of equivalents?

A "yes" answer to this question is a finding for Colibri.

A "no" answer is a finding for Medtronic.

    Claim 1    Yes: _____    No: _____

    Claim 2    Yes: _____    No: _____

    Claim 3    Yes: _____    No: _____

---

[1] **[Colibri's position]** The jury should receive a single instruction on the question of infringement. The jury will be instructed on the specifics of direct and induced infringement, the doctrine of equivalents, and literal infringement. There are any number of factual components that lawyers could identify for special interrogatories in a verdict form. For example, the factual underpinnings for proving invalidity could result in many more special interrogatories than the single question included in the proposed verdict form. But for lay jurors, such parsing raises the risk of juror confusion and inconsistent verdicts. The jury is asked to answer a single factual question for infringement: did Medtronic induce doctors to infringe the '294 patent? Colibri is unaware of any requirement that a jury issue a unanimous verdict on the question whether infringement was literal or by equivalents. Literal and equivalents infringement are frequently included in a single verdict question without the parsing Medtronic proposes. In addition, there is only a single element for which equivalents infringement is alleged, which means any question on review is simply whether Colibri proved infringement literally or by equivalents, which is not a complicated endeavor for a reviewing court. Contrary to Medtronic's suggestion, there is no difference in Colibri's potential damages award if a jury finds literal infringement or infringement by equivalents. Medtronic has always taught doctors that the pusher member moves towards the ventricle, which is the basis for either literal or equivalents infringement. And Colibri's expert explains why any change in what Medtronic taught doctors does not relate to the single element that could be found infringed under the doctrine of equivalents.

# MEDTRONIC COREVALVE'S PROPOSED JURY QUESTION NO. 1
## INFRINGEMENT

1. Did Colibri prove by a preponderance of the evidence that Medtronic CoreValve actively induced infringement of the following claims of Colibri's U.S. Patent No. 8,900,294 ('294 patent)?

A "yes" answer to this question is a finding for Colibri.

A "no" answer is a finding for Medtronic CoreValve.

      Claim 1    Yes: _____    No: _____

      Claim 2    Yes: _____    No: _____

      Claim 3    Yes: _____    No: _____

**If you answered "No" for all three claims, then proceed to Jury Question No. 2 on Page 5.**

If you answered "Yes" for one or more claims, did doctors directly infringe the claim(s) literally or under the doctrine of equivalents?

**You may select only one option below.**

      Literal\_\_\_\_\_    Doctrine of Equivalents\_\_\_\_\_[2]

---

[2] **[Medtronic's position]** The main difference between the parties' competing proposals concerns whether the jury should be asked whether any infringement was literal or under the doctrine of equivalents ("DOE").

[PROPOSED] JURY VERDICT FORM        PAGE 3

Asking the jury to distinguish between literal and DOE infringement is necessary because well-established precedent states that the two theories of infringement are mutually exclusive. *See Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997) ("[A] product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention."); *Schumer v. Lab. Comput. Sys.*, 308 F.3d 1304, 1314 n.7 (Fed. Cir. 2002) ("Failure of literal infringement is precisely the realm in which the doctrine of equivalents operates."). A jury's finding of infringement therefore must be based on one theory or the other: it cannot be both. For example, if the jury finds DOE infringement, it necessarily means that the jury found there was *no* literal infringement. This Court, the Federal Circuit, and the parties should have this information before proceeding to post-verdict review. Indeed, the Supreme Court and Federal Circuit encourage the use of special interrogatories in the jury verdict form when both literal and DOE infringement theories are at issue. *See Warner-Jenkinson*, 520 U.S. at 39 n.8; *Cormack Communications Inc. v. Harris, Corp.*, 156 F.3d 1182, 1189 (Fed. Cir. 1998).

The jury's choice of infringement theory has significant implications for post-verdict review. If the jury found literal infringement, then the reviewing court needs to determine whether substantial evidence supports a finding of literal infringement. If the jury found DOE infringement, then the verdict cannot be supported by reference to any literal infringement theory, because the jury necessarily will have found *no* literal infringement. Rather, the question for the reviewing court would be whether substantial evidence supports a finding of DOE infringement.

In addition, a finding of DOE infringement would bring into play Medtronic's legal arguments regarding why DOE is unavailable as a matter of law, such as prosecution history estoppel and the dedication/disclosure doctrine. This Court rejected these theories as a matter of law at the summary judgment stage. But they would be relevant on post-verdict review if the jury finds DOE infringement. The reviewing courts and parties need to know the basis for the jury's infringement finding so they can determine what issues are relevant on post-verdict review.

Further, the choice between literal and DOE infringement would have a significant impact on damages in this case. Colibri's induced *literal* infringement theory depends on a Medtronic CoreValve document instructing doctors on the "cusp/overlap technique." This document was not published until 2020. So under Colibri's literal infringement (*i.e.*, "cusp/overlap") theory there cannot be any direct infringement *or* any acts of inducement before this document's 2020 publication. *See Roche Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*, 30 F.4th 1109, 1119-21 (Fed. Cir. 2022) (explaining that "neither induced nor contributory infringement 'can *exist* until there is a direct infringement'" and damages period cannot begin before inducing acts occur) (emphasis in original). Accordingly, if the jury finds literal infringement, then the damages period cannot begin any earlier than the date this document was disseminated to doctors. By contrast, Colibri relies on pre-2020 acts for its induced *DOE* infringement theory. Damages cannot properly be assessed or reviewed without knowing the theory—literal or DOE?—on which the jury bases any infringement finding.

Finally, contrary to Colibri's assertions of complexity, if the jury finds infringement, it is a very simple task for the jury to identify whether the direct infringement was literal or by equivalents. Colibri will have presented both theories at trial, Medtronic

---

will have responded to both theories at trial, and the jury will have been instructed on both theories—including the fact that the theories are mutually exclusive. Answering this question therefore will be a straightforward and expected task for the jury if it finds infringement. There is no good reason to keep the Court, the Federal Circuit, and the parties in the dark about which of the two mutually exclusive forms of infringement was found. By contrast, asking the jury to shed light on this crucial issue by simply checking one of two options will greatly facilitate post-verdict review and potentially obviate a costly new trial if the infringement verdict is altered on post-trial motions or appeal.

The only other substantive difference between the parties' proposals is that Medtronic proposes to use the word "actively" before "induced infringement" to conform to the statutory language. *See* 35 U.S.C. § 271(b) ("Whoever actively induces infringement of a patent shall be liable as an infringer.").

# JURY QUESTION NO. 2
## INVALIDITY

Did Medtronic CoreValve prove by clear and convincing evidence that one or more of the following claims of Colibri's '294 patent is invalid?

A "yes" answer to this question is a finding for Medtronic CoreValve.
A "no" answer is a finding for Colibri.

    Claim 1    Yes: _____    No: _____

    Claim 2    Yes: _____    No: _____

    Claim 3    Yes: _____    No: _____

# JURY QUESTION NO. 3

## DAMAGES

**If you found any claim(s) of the '294 patent infringed by Medtronic CoreValve and not invalid (that is to say, if you answered "yes" to Question #1 for any claim(s) and you answered "no" for all such claims in Question #2), then proceed to answering this question on damages.**

**Otherwise, skip Jury Questions Nos. 3 and 4 and proceed to page 7.**

What amount of damages do you award Colibri for Medtronic CoreValve's infringement?

$ _____

# JURY QUESTION NO. 4

## WILLFUL INFRINGEMENT

**If you found any claim(s) of the '294 patent infringed by Medtronic CoreValve and not invalid (that is to say, if you answered "yes" to Question #1 for any claim(s) and you answered "no" for all such claims in Question #2), then proceed to answering this question on willful infringement.**

Did Colibri prove by a preponderance of the evidence that Medtronic CoreValve willfully infringed the '294 patent since infringement began?

A "yes" answer to this question is a finding for Colibri.

A "no" answer is a finding for Medtronic CoreValve.

Yes: _____        No: _____

You have now reached the end of the Verdict Form and should review it to ensure it accurately reflects your unanimous determinations. The Presiding Juror should sign and date the Verdict Form in the spaces below and notify the Bailiff that you have reached a verdict. The Presiding Juror should retain possession of the Verdict Form and bring it when the jury is brought back into the courtroom.

Date: _____

Presiding Juror: _____