# EXHIBIT A

Mieke K. Malmberg (SBN 209992)
mmalmberg@skiermontderby.com
**SKIERMONT DERBY LLP**
633 West 5th Street, Suite 5800
Los Angeles, California 90071
Tel.: (213) 788-4500
Fax: (213) 788-4545

John M. Hughes (*pro hac vice*)
john.hughaes@bartlitbeck.com
Joseph C. Smith, Jr. (*pro hac vice*)
joseph.smith@bartlitbeck.com
Meg E. Fasulo (*pro hac vice*)
meg.fasulo@bartlitbeck.com
**BARTLIT BECK LLP**
1801 Wewatta, Suite 1200
Denver, Colorado 80202
Tel.: (303) 592-3100
Fax: (303) 592-3140

*Attorneys for Plaintiff*
Colibri Heart Valve LLC
(*continued in signature block*)

Mark D. Fowler (SBN 124235)
mark.fowler@dlapiper.com
**DLA PIPER LLP (US)**
2000 University Avenue
East Palo Alto, California 94303-2250
T: (650) 833-2000 | F: (650) 833-2001

Kathryn Riley Grasso (SBN 211187)
kathryn.riley@dlapiper.com
**DLA PIPER LLP (US)**
401 B Street, Suite 1700
San Diego, CA 92101
T: (619) 699-2700 | F: (619) 699-2701

*Attorneys for Defendant*
Medtronic CoreValve LLC
(*continued in signature block*)

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION – SANTA ANA

| | |
|---|---|
| COLIBRI HEART VALVE LLC,<br><br>Plaintiff,<br><br>v.<br><br>MEDTRONIC COREVALVE LLC,<br><br>Defendant. | Case No.: 8:20-cv-00847-DOC-JDE<br><br>**EXHIBIT A – [PROPOSED] JURY INSTRUCTIONS**<br><br>**Judge: Hon. David O. Carter**<br>**Technical Special Master: David Keyzer**<br><br>**Trial Date: January 31, 2023** |

1
2
3
4
5
6
7
8
9
10
11
12
13
14     **PROPOSED PRELIMINARY JURY INSTRUCTIONS**
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## PRELIMINARY INSTRUCTION NO. 1

## DUTY OF JURY

Members of the jury: You are now the jury in this case. It is my duty to instruct you on the law.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

At the end of the trial, I will give you final instructions. It is the final instructions that will govern your duties.

Please do not read into these instructions, or anything I may say or do, that I have an opinion regarding the evidence or what your verdict should be.

**Authority:** 9th Cir. Civ. Jury Instructions 1.3 (2021).

## PRELIMINARY INSTRUCTION NO. 2

## GENERAL GUIDANCE REGARDING PATENTS

**[The parties propose that the Court give the below instruction and show the jury the Federal Judicial Center's patent video.]**

At this time, we are going to show a short video as an introduction to the patent system. It contains background information to help you understand what patents are, why they are needed, the role of the Patent Office, and why disputes over patents arise. This was prepared by the federal government, not by the parties. The video references a sample patent that I have given to you.

**[VIDEO WILL BE PLAYED]**

## PRELIMINARY INSTRUCTION NO. 3

## SUMMARY OF CONTENTIONS

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

This is a patent infringement case. The plaintiff in this case is Colibri Heart Valve LLC, which I will refer to as "Colibri." The defendant in this case is Medtronic CoreValve LLC, which I will refer to as "Medtronic CoreValve."

The case involves United States Patent No. 8,900,294, obtained by Dr. David Paniagua and Dr. David Fish, and transferred by Dr. Paniagua and Dr. Fish to Colibri. For your convenience, the parties and I will often refer to United States Patent No. 8,900,294 by the last three numbers of the patent number, namely, as the "'294 patent." The '294 patent is titled "Method of Controlled Release of a Percutaneous Replacement Heart Valve" and is directed to methods for using a replacement heart valve delivery system and device.

Colibri filed suit in this Court seeking money damages from Medtronic CoreValve for allegedly infringing the '294 patent by actively inducing infringement of claims 1–3 of the '294 patent. These are sometimes referred to as the "asserted claims" of the patent. Colibri alleges that Medtronic CoreValve induced doctors to infringe the '294 patent when doctors used the Medtronic CoreValve products known as the Evolut R, Evolut PRO, and Evolut PRO+ systems in certain medical procedures.

Medtronic CoreValve denies that doctors who use the Evolut products ever infringed claims 1–3 of the '294 patent, and further denies that it ever actively induced any doctor to infringe claims 1–3. Medtronic CoreValve also argues that claims 1–3 of the '294 patent are invalid. I will instruct you later as to the ways in which a patent may be invalid. In general, however, a patent is invalid if the invention(s) it claims is not new or is obvious in view of the state of the art at the relevant time.

Your job will be to decide whether claims 1–3 of the '294 patent have been infringed and whether those claims are invalid. If you decide that any claim of the '294 patent has been infringed and is not invalid, you will then need to decide the money damages to be awarded to Colibri to compensate it for the infringement. You will also need to make a finding as to whether the infringement was willful. If you decide that any infringement was willful, that decision should not affect any damages award you give. I will take willfulness into account later.

**Authority:** Fed. Cir. Bar Association Model Patent Jury Instructions A.2 (2020).

## PRELIMINARY INSTRUCTION NO. 4

## PATENT CLAIMS AND CLAIM CONSTRUCTION

The patent claims are the numbered sentences at the end of the patent. The claims are important because it is the words of the claims that define what a patent covers. The figures and text in the rest of the patent provide a description and/or examples of the invention and context for the claims, but it is the claims that define the breadth of the patent's coverage. Therefore, what a patent covers depends on what each of its claims covers.

A claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. The requirements of a claim are often referred to as "claim elements" or "claim limitations." The coverage of a patent is assessed claim-by-claim. When a thing (such as a product or a process) meets all of the requirements of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim. In other words, a claim covers a product or process where each of the claim elements or limitations is present in that product or process.

You will first need to understand what each claim covers in order to decide whether or not there is infringement of the claim and to decide whether or not the claim is invalid. The first step is to understand the meaning of the words used in the patent claim.

I have determined the meaning of certain terms in the asserted claims of the '294 patent. You have been given a document reflecting those meanings. For a claim term for which I have not provided you with a definition, you should apply the ordinary meaning of that term in the field of the patent. You are to apply my definitions of the terms I have construed throughout this case. However, my interpretation of the language of the claims should not be taken as an indication that I have a view regarding issues such as infringement and invalidity. Those issues are yours to decide.

1

2      **Authority:** Fed. Cir. Bar Association Model Patent Jury Instructions A.3,

3 B.2.1 (2020).

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# PRELIMINARY INSTRUCTION NO. 5

## WHAT IS EVIDENCE

The evidence you are to consider in deciding what facts have been proven consists of:

- the sworn testimony of any witness;
- the exhibits that are admitted into evidence;
- any facts to which the parties have agreed; and
- any facts that I may instruct you to accept as proved.

**Authority:** 9th Cir. Civ. Jury Instructions 1.9 (2021).

## PRELIMINARY INSTRUCTION NO. 6

## WHAT IS NOT EVIDENCE

Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you.

- Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they may say in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

- Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the Court's ruling on it.

- Testimony that is excluded or stricken, or that you are instructed to disregard, is not evidence and must not be considered. In addition, some evidence may be received only for a limited purpose. When I instruct you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.

- Anything you may see or hear when the Court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

**Authority:** 9th Cir. Civ. Jury Instructions 1.10 (2021).

## PRELIMINARY INSTRUCTION NO. 7

## DIRECT AND CIRCUMSTANTIAL EVIDENCE

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night. However, other evidence, such as a turned-on garden hose, may provide a different explanation for the presence of water on the sidewalk. Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience, and common sense.

**Authority:** 9th Cir. Civ. Jury Instructions 1.12 (2021).

**PRELIMINARY INSTRUCTION NO. 8**

**DEPOSITION IN LIEU OF LIVE TESTIMONY**

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded. When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.

You should consider deposition testimony, that was presented to you in Court in lieu of live testimony, in the same way as if the witness had testified here in Court.

**Authority:** 9th Cir. Civ. Jury Instructions 2.4 (2021).

## PRELIMINARY INSTRUCTION NO. 9

## RULING ON OBJECTIONS

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore that evidence. That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

**Authority:** 9th Cir. Civ. Jury Instructions 1.13 (2021).

## PRELIMINARY INSTRUCTION NO. 10

## BENCH CONFERENCES AND RECESSES

From time to time during the trial, it may become necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury is present in the courtroom, or by calling a recess. Please understand that while you are waiting, we are working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we will do what we can to keep the number and length of these conferences to a minimum. I may not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

**Authority:** 9th Cir. Civ. Jury Instructions 1.20 (2021).

## PRELIMINARY INSTRUCTION NO. 11

## CREDIBILITY OF WITNESSES

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

1.   the opportunity and ability of the witness to see or hear or know the things testified to;

2.   the witness's memory;

3.   the witness's manner while testifying;

4.   the witness's interest in the outcome of the case, if any;

5.   the witness's bias or prejudice, if any;

6.   whether other evidence contradicted the witness's testimony;

7.   the reasonableness of the witness's testimony in light of all the evidence; and

8.   any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

**Authority:** 9th Cir. Civ. Jury Instructions 1.14 (2021).

1
2

## PRELIMINARY INSTRUCTION NO. 12

## EXPERT OPINION

3
4
5

You will hear testimony from expert witnesses who will testify to opinions and the reasons for their opinions. This opinion testimony is allowed, because of the education or experience of these witnesses.

6
7
8
9

Such opinion testimony should be judged like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

10
11

**Authority:** 9th Cir. Civ. Jury Instructions 2.13 (2021).

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

2

## PRELIMINARY INSTRUCTION NO. 13

## CONDUCT OF THE JURY

3      I will now say a few words about your conduct as jurors.

4      First, keep an open mind throughout the trial, and do not decide what the

5   verdict should be until you and your fellow jurors have completed your deliberations

6   at the end of the case.

7      Second, because you must decide this case based only on the evidence received

8   in the case and on my instructions as to the law that applies, you must not be exposed

9   to any other information about the case or to the issues it involves during the course

10  of your jury duty. Thus, until the end of the case or unless I tell you otherwise:

11          Do not communicate with anyone in any way and do not let anyone else
            communicate with you in any way about the merits of the case or
12          anything to do with it. This includes discussing the case in person, in
            writing, by phone, tablet, or computer, or any other electronic means,
13          via email, text messaging, or any internet chat room, blog, website, or
            application, including but not limited to Facebook, YouTube, Twitter,
14          Instagram, LinkedIn, Snapchat, Tiktok, or any other forms of social
            media. This applies to communicating with your fellow jurors until I
15          give you the case for deliberation, and it applies to communicating with
            everyone else including your family members, your employer, the
16          media or press, and the people involved in the trial, although you may
            notify your family and your employer that you have been seated as a
17          juror in the case, and how long you expect the trial to last. But, if you
            are asked or approached in any way about your jury service or anything
18          about this case, you must respond that you have been ordered not to
            discuss the matter and report the contact to the Court.

19
            Because you will receive all the evidence and legal instruction you
20          properly may consider to return a verdict: do not read, watch, or listen
            to any news or media accounts or commentary about the case or
21          anything to do with it; do not do any research, such as consulting
            dictionaries, searching the Internet, or using other reference materials;
22          and do not make any investigation or in any other way try to learn about
            the case on your own. Do not visit or view any place discussed in this
23          case, and do not use the Internet or any other resource to search for or
            view any place discussed during the trial. Also, do not do any research
24          about this case, the law, or the people involved—including the parties,
            the witnesses, or the lawyers—until you have been excused as jurors. If
25          you happen to read or hear anything touching on this case in the media,
            turn away and report it to me as soon as possible.

26      These rules protect each party's right to have this case decided only on

27  evidence that has been presented here in Court. Witnesses here in Court take an oath

28  to tell the truth, and the accuracy of their testimony is tested through the trial process.

If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete, or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in Court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings. If any juror is exposed to any outside information, please notify the Court immediately.

**Authority:** 9th Cir. Civ. Jury Instructions 1.15 (2021).

1
2

## PRELIMINARY INSTRUCTION NO. 14

## NO TRANSCRIPT AVAILABLE TO JURY

3
4

I urge you to pay close attention to the trial testimony as it is given. During deliberations you will not have a transcript of the trial testimony.

5
6

**Authority:** 9th Cir. Civ. Jury Instructions 1.17 (2021).

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# PRELIMINARY INSTRUCTION NO. 15

## TAKING NOTES

If you wish, you may take notes to help you remember the evidence. If you do take notes, please keep them to yourself until you go to the jury room to decide the case. Do not let notetaking distract you. When you leave, your notes should be left in the courtroom. No one will read your notes.

Whether or not you take notes, you should rely on your own memory of the evidence. Notes are only to assist your memory. You should not be overly influenced by your notes or those of other jurors.

**Authority:** 9th Cir. Civ. Jury Instructions 1.18 (2021).

# PRELIMINARY INSTRUCTION NO. 16

## OUTLINE OF TRIAL

Trial will now begin. First, each side may make an opening statement. An opening statement is not evidence. It is simply an outline to help you understand what that party expects the evidence will show. A party is not required to make an opening statement.

There are two standards of proof that you will apply to the evidence, depending on the issue you are deciding. On some issues, you must decide whether certain facts have been proven by a preponderance of the evidence. A preponderance of the evidence means that the fact that is to be proven is more likely true than not, that is, that the evidence in favor of that fact being true is sufficient to tip the scale, even if slightly, in its favor.

On other issues that I will identify for you, you must use a higher standard and decide whether the fact has been proven by clear and convincing evidence, that is, that you have been left with a clear conviction that the fact has been proven.

These standards are different from what you may have heard about in criminal proceedings where a fact must be proven beyond a reasonable doubt. To prove evidence by a preponderance of the evidence, the proof need only be sufficient to tip the scale in favor of the party proving the fact. You may think of this "preponderance of the evidence" as slightly greater than 50%. To prove evidence beyond a reasonable doubt, the fact must be proven to a very high degree of certainty. You may think of clear and convincing evidence as being between the two standards.

After the opening statements, Colibri will present its evidence in support of its contention that some of the claims of the '294 patent have been infringed by Medtronic CoreValve and that the infringement has been willful. To prove infringement of any claim, Colibri must persuade you that it is more likely than not that Medtronic CoreValve has infringed that claim. To persuade you that any

infringement was willful, Colibri must also prove that it is more likely than not that the infringement was willful.

Medtronic CoreValve will then put on evidence responding to Colibri's evidence on the issues of infringement and willfulness. Medtronic CoreValve will also present its evidence in support of its contention that the claims of the '294 patent are invalid. The '294 patent is presumed to be valid. In other words, it is presumed to have been properly granted by the Patent and Trademark Office. But that presumption of validity can be overcome if Medtronic CoreValve persuades you by clear and convincing evidence that the claims are invalid.

After the evidence has been presented, the attorneys will make closing arguments and I will give you final instructions on the law that applies to the case. These closing arguments by the attorneys are not evidence. After the closing arguments and instructions, you will decide the case.

**Authority:** Fed. Cir. Bar Association Model Patent Jury Instructions A.5 (2020); AIPLA Model Patent Jury Instructions II.2, II.3 (2019).

# PRELIMINARY INSTRUCTION NO. 17

## STIPULATIONS OF FACT

The following facts are agreed by Colibri and Medtronic CoreValve and require no proof:

1.  The Plaintiff in this case is Colibri.

2.  The Defendant in this case is Medtronic CoreValve.

3.  Colibri initiated this action against Medtronic CoreValve on May 4, 2020, by filing a complaint for patent infringement.

4.  Colibri owns the patent that is at issue in this case: United States Patent No. 8,900,294, which will be referred to as the '294 patent.

5.  The named inventors of the '294 patent are Dr. David Paniagua and Dr. David Fish.

6.  The '294 patent was filed on April 15, 2014, as United States Patent Application No. 14/253,656, published on August 28, 2014, as United States Patent Publication No. 2014/0243955 A1, and issued on December 2, 2014.

7.  The '294 patent expired on January 4, 2022.

8.  The '294 patent concerns methods for using a replacement heart valve delivery system.

9.  The '294 patent relates to replacement heart valves that are delivered percutaneously through the patient's skin and via a patient's blood vessel (also referred to as endovascularly), such as via a patient's femoral artery.

10. The percutaneous replacement heart valve delivery technique is an alternative to traditional open-heart surgery and has cost and safety benefits over open-heart surgery, including reducing the use of general anesthesia and shorter hospital stays.

11. Colibri asserts that Medtronic CoreValve infringed the '294 patent.

12. Colibri alleges that Medtronic CoreValve infringed claims 1, 2 and 3 of the '294 patent by inducing doctors to directly infringe those claims.

13. Colibri contends that doctors who use Medtronic CoreValve's Evolut R, Evolut PRO and Evolut PRO+ systems during replacement heart valve procedures directly infringed claims 1, 2 and 3 of the '294 patent.

14. The EnVeo™ PRO Delivery System is intended for use with the Evolut™ R, Evolut™ Pro, and Evolut™ Pro+ Systems.

15. Each Medtronic CoreValve Evolut R System, Evolut Pro System, and Evolut Pro+ System includes a stent member that comprises nitinol.

16. The parties filed a Joint Stipulation Regarding Representative Products, which I will refer to as the "Stipulation," in which they have agreed that two replacement heart valve devices and two delivery catheters are representative of all accused products in this litigation.

17. The two replacement heart valve devices subject to the parties' Stipulation are: (i) the Evolut R replacement heart valve device with serial numbers D053434, B955614, and B957536; and (ii) the Evolut PRO replacement heart valve device with serial numbers D541552, D539526, D539995 and D523618. Both replacement heart valve devices utilize the ENVPRO-14-US delivery catheter and the L-ENVPRO-14-US loading system.

18. Medtronic CoreValve began commercial sales of the Evolut™ R System in the United States in 2015.

19. Medtronic CoreValve began commercial sales of the Evolut™ Pro System in the United States in 2017.

20. Medtronic CoreValve began commercial sales of the Evolut™ Pro+ System in the United States in 2019.

21. For purposes of determining a reasonable royalty in this case, there would have been one hypothetical negotiation occurring in June 2015.

22.     The sutures are not part of the valve.


**Authority:** Dkt. 295-2, App'x A; 9th Cir. Civ. Jury Instructions 2.2 (2021).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **INSTRUCTIONS DURING CASE**

## INSTRUCTION DURING CASE NO. 1

## USE OF INTERROGATORIES

Evidence will now be presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side. These answers were given in writing and under oath before the trial in response to questions that were submitted under established Court procedures. You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand.

**Authority:** 9th Cir. Civ. Jury Instructions 2.11 (2021).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## INSTRUCTION DURING CASE NO. 2

## DEPOSITION TESTIMONY OF BRUCE WAGNER

Evidence will now be presented to you in the form of a video deposition of Bruce Wagner. Mr. Wagner is a former Medtronic employee who resides in Florida. At the time of his deposition in this case, Mr. Wagner was employed by Medtronic and was designated by Medtronic to testify on behalf of the company on certain topics.

1

2

### INSTRUCTION DURING CASE NO. 3

### DEPOSITION TESTIMONY OF JOSEPH HORN

3

4

5

6

Evidence will now be presented to you in the form of a video deposition of Joseph Horn. Mr. Horn is the former CEO of Colibri. He passed away before trial. At the time of his deposition in this case, Mr. Horn was employed by Colibri and was designated by Colibri to testify on behalf of the company on certain topics.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14         **<u>PROPOSED FINAL JURY INSTRUCTIONS</u>**
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**FINAL INSTRUCTION NO. ___**

**DUTY OF JURY**

Members of the Jury: Now that you have heard all the evidence, it is my duty to instruct you on the law that applies to this case.

A copy of these instructions will be sent to the jury room for you to consult during your deliberations.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

**Authority:** 9th Cir. Civ. Jury Instructions 1.4 (2021).

1
2

### FINAL INSTRUCTION NO. ___

### WHAT A PATENT IS AND HOW ONE IS OBTAINED

3
4
5

This case involves a dispute relating to United States patents. Before summarizing the positions of the parties and the issues involved in the dispute, let me take a moment to explain what a patent is and how one is obtained.

6
7
8
9
10
11
12
13

Patents are granted by the United States Patent and Trademark Office (sometimes called "the PTO"). A valid United States patent gives the patent holder the right for up to 20 years from the date the patent application was filed to exclude others from making, using, offering to sell, or selling the patented invention within the United States, or from importing it into the United States, without the patent holder's permission. A violation of the patent holder's rights is called infringement. The patent holder may try to enforce a patent against persons or entities believed to be infringers by a lawsuit filed in federal court.

14
15
16
17
18
19
20
21
22

The process of obtaining a patent is called patent prosecution. To obtain a patent, one must first file an application with the PTO. The PTO is an agency of the Federal Government and employs trained Examiners who review applications for patents. The application includes what is called a "specification," which contains a written description of the claimed invention telling what the invention is, how it works, how to make it, and how to use it. The specification concludes with one or more numbered sentences. These are the patent "claims." If a patent is eventually granted by the PTO, the claims define the boundaries of its protection and give notice to the public of those boundaries.

23
24
25
26
27
28

The Examiner reviews the application to determine whether or not the claims are patentable (appropriate for patent protection) and whether or not the specification adequately describes the invention claimed. In examining a patent application, the Examiner reviews certain information about the state of the technology at the time the application was filed. The PTO searches for and reviews information that is publicly available or that is submitted by the applicant. This information is called

"prior art." The Examiner reviews this prior art to determine whether or not the invention is truly an advance over the state of the art at the time. Prior art is defined by law, and I will give you, at a later time during these instructions, specific instructions as to what constitutes prior art. However, in general, prior art includes information that demonstrates the state of technology that existed before the application was filed. A patent lists the prior art that the Examiner considered; this list is called the "cited references."

After the prior art search and examination of the application, the Examiner informs the applicant in writing of what the Examiner has found and whether the Examiner considers any claim to be patentable and, thus, would be "allowed." This writing from the Examiner is called an "Office Action." If the Examiner rejects the claims, the applicant has an opportunity to respond to the Examiner to try to persuade the Examiner to allow the claims. During prosecution, the applicant also has an opportunity to change the claims, to cancel claims, and to submit new claims. This process may go back and forth for some time until the Examiner is satisfied that the application meets the requirements for a patent and the application issues as a patent, or that the application should be rejected and no patent should issue. The papers generated during these communications between the Examiner and the applicant are called the "prosecution history."

The fact that the PTO grants a patent does not necessarily mean that any invention claimed in the patent, in fact, deserves the protection of a patent. For example, the PTO may not have had available to it all other prior art that will be presented to you. In addition, there is the possibility that mistakes were made or that information was overlooked. Examiners have a lot of work to do, and no process is perfect. Also, unlike a court proceeding, patent prosecution takes place without input from those who are later alleged to infringe the patent. A person accused of infringement has the right to argue here in federal court that a claimed invention in the patent is invalid because it does not meet the requirements for a patent. A person

accused of infringement also has the right here in federal court to deny infringement.

It is your job to consider the evidence presented by the parties and determine independently whether or not Colibri has proven that Medtronic CoreValve infringes the patents at issue and whether or not Medtronic CoreValve has proven that the patents at issue are invalid.

**FINAL INSTRUCTION NO. ___**

**PATENT CLAIMS**

The patent claims are the numbered sentences at the end of each patent. The claims are important because it is the words of the claims that define what a patent covers. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage. Therefore, what a patent covers depends, in turn, on what each of its claims covers.

To know what a claim covers, a claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. The requirements of a claim are often referred to as "claim elements" or "claim limitations." The coverage of a patent is assessed claim-by-claim. When a thing (such as a product or method) meets all of the requirements of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim. In other words, a claim covers a product or method where each of the claim elements or limitations is present in that product or method. You will first need to understand what each claim covers in order to decide whether or not there is infringement of the claim and to decide whether or not the claim is invalid.

1

2

# FINAL INSTRUCTION NO. ___

## SUMMARY OF CONTENTIONS

3   As I did at the start of the case, I will first give you a summary of each side's

4   contentions in this case. I will then provide you with detailed instructions on what

5   each side must prove to win on each of its contentions.

6   As I previously told you, Colibri seeks money damages from Medtronic

7   CoreValve for allegedly infringing United States Patent No. 8,900,294 (referred to

8   as the '294 patent) by actively inducing infringement of claims 1–3 of the '294 patent

9   by doctors. Claims 1–3 are the asserted claims of the '294 patent. Colibri asserts that

10  Medtronic CoreValve has actively induced infringement by inducing doctors to use

11  the Evolut R, Evolut PRO, and Evolut PRO+ systems in a way that infringes the '294

12  patent. Medtronic CoreValve denies that any doctor has used the Evolut products in

13  an infringing manner and also denies that it has induced doctors to infringe any of

14  the asserted claims of the '294 patent. Your job is to decide whether Colibri has

15  proved by a preponderance of the evidence that doctors have used the Evolut products

16  in an infringing manner and whether Medtronic CoreValve has induced infringement

17  of any of the asserted claims of the '294 patent.

18  Medtronic CoreValve also contends that the asserted claims are invalid.

19  Colibri denies that the asserted claims are invalid. Your job will also be to decide

20  whether Medtronic CoreValve has proved by clear and convincing evidence that any

21  of the asserted claims are invalid.

22  In sum, your job will be to decide whether or not any of the asserted claims

23  have been infringed and whether or not those claims are invalid. If you decide that

24  any claim of the '294 patent has been infringed and is not invalid, you will then need

25  to decide any money damages to be awarded to Colibri to compensate it for the

26  infringement. You will also need to make a finding as to whether any infringement

27  was willful. If you decide that any infringement was willful, that decision should not

28  affect any damages award you make. I will take willfulness into account later.

1

2          **Authority:** Fed. Cir. Bar Association Model Patent Jury Instructions B.1

3      (2020).

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2

# FINAL INSTRUCTION NO. ___

## CLAIM CONSTRUCTION

3  I have already determined the meaning of the claims of the '294 patent. You
4  have been given a document reflecting those meanings. For a claim term for which I
5  have not provided you with a definition, you should apply the ordinary meaning of
6  that term in the field of the patent. You are to apply my definitions of the terms I have
7  construed throughout this case and the ordinary meaning in the field of the patent for
8  the remaining terms. However, my interpretation of the language of the claims should
9  not be taken as an indication that I have a view regarding issues such as infringement
10  and invalidity. Those issues are yours to decide.

11  For the term "valve," the Court has construed this term to mean: "portions of
12  the replacement heart valve device that allow the one-way flow of blood."

13  For the term "residing entirely within an inner channel of the stent member,"
14  the Court has construed this term to mean: "residing such that all portions of the valve
15  are entirely within the inner channel of the stent member."

16  For the term "pushing out the pusher member from the moveable sheath," the
17  Court has construed this term to mean: "pressing against the pusher member with a
18  force that moves the pusher member outward from the moveable sheath."

19
20  **Authority:** Fed. Cir. Bar Association Model Patent Jury Instructions A.3
21  (2020); Dkt. 97-1.

22
23
24
25
26
27
28

# FINAL INSTRUCTION NO. ___

## WHAT IS EVIDENCE

The evidence you are to consider in deciding what facts have been proven consists of:

- the sworn testimony of any witness;

- the exhibits that are admitted into evidence;

- any facts to which the parties have agreed; and

- any facts that I may instruct you to accept as proved.


**Authority:** 9th Cir. Civ. Jury Instructions 1.9 (2021).

# FINAL INSTRUCTION NO. ___

## STIPULATIONS OF FACT

The following facts are agreed by Colibri and Medtronic CoreValve and require no proof:

1. The Plaintiff in this case is Colibri.

2. The Defendant in this case is Medtronic CoreValve.

3. Colibri initiated this action against Medtronic CoreValve on May 4, 2020, by filing a complaint for patent infringement.

4. Colibri owns the patent that is at issue in this case: United States Patent No. 8,900,294, which will be referred to as the '294 patent.

5. The named inventors of the '294 patent are Dr. David Paniagua and Dr. David Fish.

6. The '294 patent was filed on April 15, 2014, as United States Patent Application No. 14/253,656, published on August 28, 2014, as United States Patent Publication No. 2014/0243955 A1, and issued on December 2, 2014.

7. The '294 patent expired on January 4, 2022.

8. The '294 patent concerns methods for using a replacement heart valve delivery system.

9. The '294 patent relates to replacement heart valves that are delivered percutaneously through the patient's skin and via a patient's blood vessel (also referred to as endovascularly), such as via a patient's femoral artery.

10. The percutaneous replacement heart valve delivery technique is an alternative to traditional open-heart surgery and has cost and safety benefits over open-heart surgery, including reducing the use of general anesthesia and shorter hospital stays.

11. Colibri asserts that Medtronic CoreValve infringed the '294 patent.

12. Colibri alleges that Medtronic CoreValve infringed claims 1, 2 and 3 of the '294 patent by inducing doctors to directly infringe those claims.

13. Colibri contends that doctors who use Medtronic CoreValve's Evolut R, Evolut PRO and Evolut PRO+ systems during replacement heart valve procedures directly infringed claims 1, 2 and 3 of the '294 patent.

14. The EnVeo™ PRO Delivery System is intended for use with the Evolut™ R, Evolut™ Pro, and Evolut™ Pro+ Systems.

15. Each Medtronic CoreValve Evolut R System, Evolut Pro System, and Evolut Pro+ System includes a stent member that comprises nitinol.

16. The parties filed a Joint Stipulation Regarding Representative Products, which I will refer to as the "Stipulation," in which they have agreed that two replacement heart valve devices and two delivery catheters are representative of all accused products in this litigation.

17. The two replacement heart valve devices subject to the parties' Stipulation are: (i) the Evolut R replacement heart valve device with serial numbers D053434, B955614, and B957536; and (ii) the Evolut PRO replacement heart valve device with serial numbers D541552, D539526, D539995 and D523618. Both replacement heart valve devices utilize the ENVPRO-14-US delivery catheter and the L-ENVPRO-14-US loading system.

18. Medtronic CoreValve began commercial sales of the Evolut™ R System in the United States in 2015.

19. Medtronic CoreValve began commercial sales of the Evolut™ Pro System in the United States in 2017.

20. Medtronic CoreValve began commercial sales of the Evolut™ Pro+ System in the United States in 2019.

21. For purposes of determining a reasonable royalty in this case, there would have been one hypothetical negotiation occurring in June 2015.

22.    The sutures are not part of the valve.


**Authority:** Dkt. 295-2, App'x A; 9th Cir. Civ. Jury Instructions 2.2 (2021).

## FINAL INSTRUCTION NO. ___

## WHAT IS NOT EVIDENCE

Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you.

- Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they may say in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

- Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the Court's ruling on it.

- Testimony that is excluded or stricken, or that you are instructed to disregard, is not evidence and must not be considered. In addition, some evidence may be received only for a limited purpose. When I instruct you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.

- Anything you may see or hear when the Court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

**Authority:** 9th Cir. Civ. Jury Instructions 1.10 (2021).

# FINAL INSTRUCTION NO. ___

## DIRECT AND CIRCUMSTANTIAL EVIDENCE

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night. However, other evidence, such as a turned-on garden hose, may provide a different explanation for the presence of water on the sidewalk. Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience, and common sense.

**Authority:** 9th Cir. Civ. Jury Instructions 1.12 (2021).

**FINAL INSTRUCTION NO. ___**

**CREDIBILITY OF WITNESSES**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

1. the opportunity and ability of the witness to see or hear or know the things testified to;

2. the witness's memory;

3. the witness's manner while testifying;

4. the witness's interest in the outcome of the case, if any;

5. the witness's bias or prejudice, if any;

6. whether other evidence contradicted the witness's testimony;

7. the reasonableness of the witness's testimony in light of all the evidence; and

8. any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

1

2

3        The weight of the evidence as to a fact does not necessarily depend on the
number of witnesses who testify. What is important is how believable the witnesses
were, and how much weight you think their testimony deserves.

4

5        **Authority:** 9th Cir. Civ. Jury Instructions 1.14 (2021).

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FINAL INSTRUCTION NO. ___**

**EXPERT OPINION**

You will hear testimony from expert witnesses who will testify to opinions and the reasons for their opinions. This opinion testimony is allowed, because of the education or experience of these witnesses.

Such opinion testimony should be judged like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

**Authority:** 9th Cir. Civ. Jury Instructions 2.13 (2021).

**FINAL INSTRUCTION NO. ___**

**NO TRANSCRIPT AVAILABLE TO JURY**

During deliberations you will not have a transcript of the trial testimony.


**Authority:** 9th Cir. Civ. Jury Instructions 1.17 (2021).

**FINAL INSTRUCTION NO. ___**

**TAKING NOTES**

You may have taken notes to help you remember the evidence. If you did take notes, please keep them to yourself until you go to the jury room to decide the case.

Whether or not you took notes, you should rely on your own memory of the evidence. Notes are only to assist your memory. You should not be overly influenced by your notes or those of other jurors.

**Authority:** 9th Cir. Civ. Jury Instructions 1.18 (2021).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## FINAL INSTRUCTION NO. ___

## BURDEN OF PROOF – PREPONDERANCE OF THE EVIDENCE

When a party has the burden of proving any claim by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim is more probably true than not true. If you consider a scale where each party's evidence is placed on either side, the scale must only tip slightly in one party's direction for that party to prove a fact by the preponderance of the evidence. You may think of this "preponderance of the evidence" as slightly greater than 50%.

You should base your decision on all the evidence, regardless of which party presented it.

**Authority:** 9th Cir. Civ. Jury Instructions 1.6 (2021); Fed. Cir. Bar Association Model Patent Jury Instructions A.5 (2020).

1
2

**FINAL INSTRUCTION NO. ___**

**INFRINGEMENT GENERALLY**

3
4
5
6

I will now instruct you how to decide whether Colibri has proven that Medtronic CoreValve has infringed the '294 patent. Infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement as to one claim but no infringement as to another.

7
8
9

To prove infringement, Colibri must prove the requirements for infringement by a preponderance of the evidence—that is, that it is more likely than not that all of the requirements of infringement have been proved.

10

I will now explain each of these types of infringement in more detail.

11
12
13

**Authority:** Fed. Cir. Bar Association Model Patent Jury Instructions B.3.1 (2020).

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

2

### FINAL INSTRUCTION NO. ___

### DIRECT INFRINGEMENT BY "LITERAL INFRINGEMENT"

3

4

There are two types of "direct infringement": (1) "literal infringement" and (2) "infringement under the doctrine of equivalents."

5

6

7

8

9

10

11

12

To prove literal infringement, Colibri must prove by a preponderance of the evidence that doctors who used the Evolut R, Evolut PRO, and Evolut PRO+ systems used the devices in a way that performed each and every step set forth in a claim and did so without the permission of Colibri during the time the '294 patent was in force. If the doctors who used the Evolut R, Evolut PRO, and Evolut PRO+ systems did not perform one or more steps recited in a claim, then doctors did not literally infringe that claim. You must compare the accused processes with each requirement of each claim to determine whether all of the requirements of that claim are met.

13

14

15

16

There are two types of claims asserted by Colibri: independent and dependent. As you saw during the trial, an independent claim stands on its own. A dependent claim, however, includes all the requirements of any of the claims to which it refers plus additional requirements of its own.

17

18

19

20

21

22

23

You must determine, separately for each asserted claim, whether there is direct infringement. For dependent claims, if you find that a claim to which a dependent claim refers is not infringed, there cannot be infringement of that dependent claim. On the other hand, if you find that an independent claim has been infringed, you must still decide, separately, whether the use meets the additional requirements of any claims that depend from the independent claim to determine whether those dependent claims have also been infringed.

24

25

26

**Authority:** Fed. Cir. Bar Association Model Patent Jury Instructions B.3.1a (2020); AIPLA Model Patent Jury Instructions V.3.2 (2019).

27

28

**FINAL INSTRUCTION NO. ___**

**DIRECT INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS**

If a person uses within the United States a process that does not literally meet all the elements of a claim and thus does not literally infringe that claim, there can still be direct infringement if that process satisfies the claim elements "under the doctrine of equivalents."

Under the doctrine of equivalents, a process infringes a claim if the accused process contains elements or performs steps that literally meet or are equivalent to each element of the claim. In addition to its literal infringement allegations, Colibri contends that one of the claim elements of claim 1 of the '294 patent is satisfied by the doctrine of equivalents, namely the claim requirement "pushing out the pusher member from the moveable sheath." Medtronic CoreValve denies that this claim element is satisfied under the doctrine of equivalents.

You may find that an element or step of the accused processes is equivalent to an element of a claim that is not met literally if a person having ordinary skill in the field of technology of the patent would have considered the differences between them to be "insubstantial" or would have found that the process: (1) performs substantially the same function and (2) works in substantially the same way (3) to achieve substantially the same result as the element of the claim. To prove infringement by "equivalents," Colibri must prove by a preponderance of the evidence the equivalency of the process to the claim element. Thus, each element of a claim must be met by the process either literally or under the doctrine of equivalents for you to find direct infringement.


**Authority:** Fed. Cir. Bar Association Model Patent Jury Instructions B.3.1c (2020).

1

2

**FINAL INSTRUCTION NO. ___**

**INDIRECT INFRINGEMENT – ACTIVE INDUCEMENT**

3   Colibri alleges that Medtronic CoreValve is liable for infringement by actively

4   inducing doctors to directly infringe the '294 patent literally or under the doctrine of

5   equivalents. As with direct infringement, you must determine whether there has been

6   active inducement on a claim-by-claim basis.

7   Medtronic CoreValve is liable for active inducement of a claim if Colibri

8   proves by a preponderance of the evidence that:

9       1.   the acts actually carried out by doctors directly infringed that claim;

10       2.   during the time the '294 patent was in force, Medtronic CoreValve took

11           action that was intended to cause and led to the infringing acts by

12           doctors; and

13       3.   either Medtronic CoreValve was aware of the '294 patent and knew that

14           the doctors would infringe that patent; or Medtronic CoreValve believed

15           there was a high probability that doctors infringed the '294 patent but

16           Medtronic CoreValve took deliberate steps to avoid learning of that

17           infringement.

18   If you find that Medtronic CoreValve was aware of the patent but did not

19   believe that the acts it encouraged infringed or were highly likely to infringe that

20   patent, then Medtronic CoreValve cannot be liable for inducement. Nor is it sufficient

21   that Medtronic CoreValve was aware of the acts by doctors that allegedly constitute

22   the direct infringement. Rather, in order to find active inducement of infringement,

23   you must find either that Medtronic CoreValve specifically intended doctors to

24   infringe the '294 patent or that Medtronic CoreValve believed there was a high

25   probability that doctors would infringe the '294 patent, but deliberately avoided

26   learning the infringing nature of doctors' acts. The mere fact, if true, that Medtronic

27   CoreValve knew or should have known that there was a substantial risk that doctors'

28

acts would infringe the '294 patent would not be sufficient to support a finding of active inducement of infringement.

**Authority:** Fed. Cir. Bar Association Model Patent Jury Instructions B.3.2 (2020); *Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, No. 2:15-cv-01202, Dkt. 333 at 7–9 (E.D. Tex. Apr. 21, 2017) (Bryson, J.).

**FINAL INSTRUCTION NO. \_\_\_**

**WILLFUL INFRINGEMENT**

In this case, Colibri argues that Medtronic CoreValve willfully infringed Colibri's patent. If you have decided that Medtronic CoreValve has infringed, you must go on and address the additional issue of whether this infringement was willful. Willfulness requires you to determine whether Colibri proved that it is more likely than not that Medtronic CoreValve knew of Colibri's patent and that the infringement by Medtronic CoreValve was intentional. You may not determine that the infringement was willful just because Medtronic CoreValve was aware of the '294 patent and infringed it. Instead, you must also find that Medtronic CoreValve deliberately infringed the '294 patent.

To determine whether Medtronic CoreValve acted willfully, consider all facts and assess Medtronic CoreValve's knowledge at the time of the challenged conduct. Facts that may be considered include, but are not limited, to:

1. whether Medtronic CoreValve acted consistently with the standards of behavior for its industry;

2. whether Medtronic CoreValve intentionally copied a product of the patent holder that is covered by the patent;

3. whether Medtronic CoreValve reasonably believed it did not infringe or that the patent was invalid;

4. whether Medtronic CoreValve made a good-faith effort to avoid infringing the '294 patent, for example, whether Medtronic CoreValve attempted to design around the '294 patent; and

5. whether or not Medtronic CoreValve tried to cover up its infringement.

**Authority:** Fed. Cir. Bar Association Model Patent Jury Instructions B.3.10 (2020).

**FINAL INSTRUCTION NO. \_\_\_**

**INVALIDITY – BURDEN OF PROOF**

I will now instruct you on the rules you must follow in deciding whether or not Medtronic CoreValve has proven that claims 1–3 of the '294 patent are not valid. To prove that any claim of a patent is not valid, Medtronic CoreValve must persuade you by clear and convincing evidence, that is, you must be left with a clear conviction that the claim is not valid.

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means that the party must present evidence that leaves you with a firm belief or conviction that it is highly probable that the factual contentions of the claim or defense are true. This is a higher standard of proof than proof by a preponderance of the evidence, but it does not require proof beyond a reasonable doubt.

**Authority:** Fed. Cir. Bar Association Model Patent Jury Instructions B.4.1 (2020); 9th Cir. Civ. Jury Instructions 1.7 (2021).

**FINAL INSTRUCTION NO. ___**

**PRIOR ART**

For someone to be entitled to a patent, the invention must actually be "new" and not obvious over what came before, which is referred to as the prior art. Prior art is considered in determining whether claims of the '294 patent are anticipated or obvious.

Prior art may include items that were publicly known or that have been used or offered for sale, or references, such as publications or patents, that disclose the claimed invention or elements of the claimed invention. To qualify as prior art, the item must pre-date the effective filing date of the '294 patent.

You must determine whether the references and items Medtronic CoreValve identifies are in fact prior art when determining whether claims of the '294 patent are anticipated or obvious. There are different types of prior art, and I will instruct you on the relevant types that you need to consider.

Medtronic CoreValve must prove by clear and convincing evidence that asserted prior art is prior art.

**Authority:** Fed. Cir. Bar Association Model Patent Jury Instructions B.4.3a-1, 4.3a-2, 4.3a-3 (2020).

**FINAL INSTRUCTION NO. \_\_\_**

**ANTICIPATION**

For someone to be entitled to a patent, the invention must actually be "new." Medtronic CoreValve contends that claims 1–3 of the '294 patent are invalid because the claimed invention is anticipated. Medtronic CoreValve must convince you of this by clear and convincing evidence, i.e., that the evidence highly probably demonstrates that the claims are invalid.

Anticipation must be determined on a claim-by-claim basis. Medtronic CoreValve must prove by clear and convincing evidence that all the requirements of a claim are present in a single piece of prior art. To anticipate the invention, the prior art does not have to use the same words as the claim, but all the requirements of the claim must have been disclosed and arranged as in the claim. The claim requirements may either be disclosed expressly or inherently—that is, necessarily implied—such that a person having ordinary skill in the art in the technology of the invention, looking at that one reference, could make and use the claimed invention.

If a dependent claim is anticipated by the prior art, then the claims from which it depends are necessarily anticipated as well.

**Authority:** Fed. Cir. Bar Association Model Patent Jury Instructions B.4.3b-1 (2020); *Amgen Inc. v. Sanofi*, 872 F.3d 1367, 1380 (Fed. Cir. 2017).

1
2

# FINAL INSTRUCTION NO. ___

## PRIORITY DATE OF THE '294 PATENT

3
4
5
6

Medtronic CoreValve contends that the grandparent application of the '294 patent is prior art and anticipates the '294 patent. Colibri contends that the grandparent application to the '294 patent is not prior art. You may have heard the parties refer to the grandparent application as the Paniagua application.

7
8
9
10

To determine whether the grandparent application is prior art, Medtronic CoreValve must show by clear and convincing evidence that the Paniagua grandparent application does not have written-description support for each claim limitation in claims 1–3 of the '294 patent.

11
12

I will now explain what it means for a claim to have written-description support in an earlier application.

13
14
15
16
17
18
19
20
21
22
23
24
25

A patent's specification must contain a written description of the product or method claimed in the patent. A patent's "specification" contains a description and figures of the claimed invention telling what the invention is, how it works, how to make it, and how to use it. When a patent claims priority to an earlier application, in this case the Paniagua grandparent application, that earlier application must contain a written description of what is claimed in the later patent, in this case the '294 patent, for the later patent to get the benefit of the earlier patent application's filing date. The written-description requirement helps ensure that the patent applicant actually invented the claimed subject matter. To satisfy the written-description requirement, the earlier application must describe each limitation of a patent claim in sufficient detail, although the exact words found in the claim need not be used. When determining whether the earlier application discloses the invention, the claim must be viewed as a whole.

26
27
28

The written-description requirement is satisfied if persons of ordinary skill in the field of the invention would recognize from reading the earlier application, in this

case the Paniagua application, that the inventor possessed the subject matter finally claimed in the patent, in this case the '294 patent.

The written-description requirement is satisfied if the earlier application shows that the inventor possessed his or her invention as of the effective filing date of the earlier application, even though the claims may have been changed or new claims added since that time.

It is unnecessary to spell out every detail of the invention in the earlier application, and specific examples are not required; but enough must be included in the specification to convince persons of ordinary skill in the art that the inventor possessed the full scope of the invention at the time of the earlier application. In evaluating whether the specification has provided an adequate written description, you may consider such factors as:

1.    the nature and scope of the later-issued patent claims;

2.    the complexity, predictability, and maturity of the technology at issue;

3.    the existing knowledge in the relevant field; and

4.    the scope and content of the prior art.

The issue of written description is decided on a claim-by-claim basis, not as to the entire patent or groups of claims.

**Authority:** AIPLA Model Patent Jury Instructions V.9 (2019); *Tobinick v. Olmarker*, 753 F.3d 1220, 1226 (Fed. Cir. 2014); *Allergan Sales, LLC v. Sandoz, Inc.*, 717 F. App'x 991, 994–95 (Fed. Cir. 2017); *Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1158 (Fed. Cir. 1998); *Rivera v. Int'l Trade Comm'n*, 857 F.3d 1315, 1319–20 (Fed. Cir. 2017); *ULF Bamberg v. Dalvey*, 815 F.3d 793, 797–98 (Fed. Cir. 2016); *ICU Medical, Inc. v. Alaris Med. Sys., Inc.*, 558 F.3d 1368, 1377–78 (Fed. Cir. 2009); *LizardTech, Inc. v. Earth Resource Mapping, Inc.*, 424 F.3d 1336, 1344–46 (Fed. Cir. 2005).

**FINAL INSTRUCTION NO. ___**

**OBVIOUSNESS**

Even though an invention may not have been identically disclosed or described before it was made by an inventor, to be patentable, the invention must also not have been obvious to a person of ordinary skill in the field of technology of the patent at the time the invention was made.

Medtronic CoreValve may establish that a patent claim is invalid by proving by clear and convincing evidence that the claimed invention would have been obvious to persons having ordinary skill in the field of replacement heart valve devices at the time the invention was made.

In determining whether a claimed invention is obvious, you must consider the level of ordinary skill in the field of replacement heart valve devices that someone would have had at the time the invention was made, the scope and content of the prior art, any differences between the prior art and the claimed invention, and, if present, so-called objective evidence or secondary considerations, which I will describe shortly. Do not use hindsight; consider only what was known at the time of the invention.

In analyzing the relevance of the differences between the claimed invention and the prior art, you do not need to look for precise teaching in the prior art directed to the subject matter of the claimed invention. You may consider the inferences and creative steps that a person of ordinary skill in the art would have employed in reviewing the prior art at the time of the invention. For example, if the claimed invention combined elements known in the prior art and the combination yielded results that were predictable to a person of ordinary skill in the art at the time of the invention, then this evidence would make it more likely that the claim was obvious. On the other hand, if the combination of known elements yielded unexpected or unpredictable results, or if the prior art teaches away from combining the known

elements, then this evidence would make it more likely that the claim that successfully combined those elements was not obvious.

Keep in mind that the existence of each element of the claimed invention in the prior art does not necessarily prove obviousness. Most, if not all, inventions rely on building blocks of prior art. In considering whether a claimed invention is obvious, you should consider whether, at the time of the claimed invention, there was a reason that a person having ordinary skill in the field of the invention would have combined the known elements in the prior art to arrive at the claimed invention. That includes such factors as:

- whether the claimed invention was merely the predictable result of using prior art elements according to their known function(s);
- whether the claimed invention provides an obvious solution to a known problem in the relevant field;
- whether the prior art teaches or suggests the desirability of combining elements claimed in the invention;
- whether the prior art teaches away from combining elements in the claimed invention; and
- whether it would have been obvious to try the combinations of elements, such as when there is a design incentive or market pressure to solve a problem and there are a finite number of identified, predictable solutions.

To find that the prior art rendered the claimed invention obvious, you must find that a person of ordinary skill would have a reasonable expectation of success in making the combination to achieve the invention claimed in the '294 patent. In addition, if the underlying technology is unpredictable, it is not enough to show that the combination would have been obvious to try.

In determining whether the claimed invention is obvious, you should consider objective evidence (sometimes called "secondary considerations") that may shed

light on whether or not the claimed invention is obvious, such as whether the claimed invention was commercially successful as a result of the merits of the claimed invention (rather than the result of design needs or market-pressure advertising or similar activities):

- whether the claimed invention satisfied a long-felt need;
- whether others had tried and failed to make the claimed invention;
- whether there were changes or related technologies or market needs contemporaneous with the claimed invention;
- whether others in the field praised the claimed invention; and
- whether persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the claimed invention.

In determining whether the claimed invention was obvious, consider each claim separately, but understand that if a dependent claim is obvious, then the claims from which it depends are necessarily obvious as well.

**Authority:** Fed. Cir. Bar Association Model Patent Jury Instructions B.4.3c (2020); AIPLA Model Patent Jury Instructions V.7.2 (2019).

1

2

**FINAL INSTRUCTION NO. ___**

**LEVEL OF ORDINARY SKILL**

3    The parties agree that the level of ordinary skill in the art relating to the

4  technology of the '294 patent was a Doctor of Medicine with experience working as

5  an interventional cardiologist, or a person with at least a Bachelor of Science degree

6  in bioengineering, mechanical engineering, or a related field with approximately two

7  years of professional experience in the field of percutaneously, transluminally

8  implantable cardiac prosthetic devices. This person could also be someone with a

9  lower degree of education but with greater practical experience in this field. It could

10  also be someone with a higher degree of education and lower practical experience in

11  this field.

12

13    **Authority:** Fed. Cir. Bar Association Model Patent Jury Instructions B.4.3c(i)

14  (2020).

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FINAL INSTRUCTION NO. ___**

**DAMAGES – INTRODUCTION**

If you find that Medtronic CoreValve infringed any claims of the '294 patent and you also find that the infringed claims are not invalid, you must then consider what amount of damages to award to Colibri.

I will now instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win this case on any issue. If you find that Medtronic CoreValve has not infringed any valid claim of the patent, then Colibri is not entitled to any damages.

The damages you award must be adequate to compensate Colibri for the infringement. They are not meant to punish. Your damages award, if you reach this issue, should put Colibri in approximately the same financial position that it would have been in had the infringement not occurred.

Colibri has the burden to establish the amount of its damages by a preponderance of the evidence. In other words, you should award only those damages that Colibri establishes that it more likely than not suffered. While Colibri is not required to prove the amount of its damages with mathematical precision, it must prove them with reasonable certainty. You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork.

In this case, Colibri seeks a reasonable royalty. A reasonable royalty is defined as the amount of money Colibri and Medtronic CoreValve would have agreed upon as a fee for use of the invention at the time just prior to when infringement began. In awarding damages, you must be careful to ensure that award is no more and no less than the value of the patented invention.

**Authority:** Fed. Cir. Bar Association Model Patent Jury Instructions B.5.1 (2020).

1
2

**FINAL INSTRUCTION NO. ___**

**REASONABLE ROYALTY – DEFINITION**

3       A royalty is a payment made to a patent holder in exchange for the right to
4   make, use, or sell the claimed invention in the United States. A reasonable royalty is
5   the amount of royalty payment that a patent holder and the alleged infringer would
6   have agreed to in a hypothetical negotiation taking place at a time prior to when the
7   infringement first began. In considering this hypothetical negotiation, you should
8   focus on what the expectations of the patent holder and the alleged infringer would
9   have been had they entered into an agreement at that time and had they acted
10  reasonably in their negotiations. In determining this, you must assume that both
11  parties believed the patent was valid and infringed and that both parties were willing
12  to enter into an agreement. This assumption is made only for purposes of the
13  hypothetical negotiation. The reasonable royalty you determine must be a royalty that
14  would have resulted from the hypothetical negotiation, and not simply a royalty either
15  party would have preferred. Evidence of things that happened after the infringement
16  first began can be considered in evaluating the reasonable royalty only to the extent
17  that the evidence aids in assessing what royalty would have resulted from a
18  hypothetical negotiation just prior to the first infringement.

19      In this case, the parties agree that the hypothetical negotiation would have
20  occurred in June 2015.

21
22      **Authority:** Fed. Cir. Bar Association Model Patent Jury Instructions B.5.6
23  (2020).

24
25
26
27
28

**FINAL INSTRUCTION NO. ___**

**DAMAGES – LUMP SUM VS. RUNNING ROYALTY**

A reasonable royalty can be paid either in the form of a one-time lump sum payment or as a "running royalty." Either method is designed to compensate the patent holder based on the infringer's use of the patented invention. It is up to you, based on the evidence, to decide what type of royalty, if any, is appropriate in this case.

Reasonable royalty awards can take the form of a lump-sum payment. A lump-sum payment is equal to an amount that the alleged infringer would have paid at the time of a hypothetical negotiation for a license covering all subsequent licensed uses of the invention. When a lump sum is paid, the infringer pays a single price for a license covering all infringing uses.

Reasonable royalty awards may also take the form of a running royalty based on the revenue from or the volume of sales of licensed products. A running royalty can be calculated, for example, by multiplying a royalty base by a royalty rate.

**Authority:** Fed. Cir. Bar Association Model Patent Jury Instructions B.5.7 (2020).

# FINAL INSTRUCTION NO. ___

## REASONABLE ROYALTY – RELEVANT FACTORS

In determining the amount of a reasonable royalty, you may consider evidence on any of the following factors, in addition to any other evidence presented by the parties on the economic value of the patent:

- Any royalties received by Colibri for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

- The rates paid by Medtronic CoreValve to license other patents comparable to the '294 patent.

- The nature and scope of the license, as exclusive or non-exclusive, or as restricted or non-restricted in terms of its territory or with respect to whom the manufactured product may be sold.

- Colibri's established policy and marketing program to maintain its right to exclude others from using the patented invention by not licensing others to use the invention, or by granting licenses under special conditions designed to preserve that exclusivity.

- The commercial relationship between Colibri and Medtronic CoreValve, such as whether or not they are competitors in the same territory in the same line of business.

- The effect of selling the patented method in promoting other sales of Medtronic CoreValve; the existing value of the invention to Colibri as a generator of sales of its non-patented items; and the extent of such collateral sales.

- The duration of the '294 patent and the term of the license.

- The established profitability of the method used under the '294 patent, its commercial success, and its popularity.

- The utility and advantages of the patented invention over the old modes or devices, if any, that had been used for achieving similar results.

- The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by or for Medtronic CoreValve, and the benefits to those who have used the invention.

- The extent to which Medtronic CoreValve has made use of the invention, and any evidence that shows the value of that use.

- The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

- The portion of the profit that arises from the patented invention itself as opposed to profit arising from unpatented features, such as the manufacturing process, business risks, or significant features or improvements added by Medtronic CoreValve.

- The opinion testimony of qualified experts.

- The amount that a licensor (such as Colibri) and a licensee (such as Medtronic CoreValve) would have agreed upon (at the time the infringement began) if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article that could be used to practice the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a patentee who was willing to grant a license.

No one factor controls and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty that Medtronic CoreValve would have been willing to pay and Colibri would have been willing to accept, acting as normally prudent business people.

**Authority:** AIPLA Model Patent Jury Instructions V.10.2.5.3 (2019); Fed. Cir. Bar Association Model Patent Jury Instructions B.5.8 (2020).

**FINAL INSTRUCTION NO. ___**

**DAMAGES – COMPARABLE AGREEMENTS**

Comparable license agreements are one factor that may inform your decision as to the proper amount and form of the reasonable royalty award, similar to the way in which the value of a house is determined relative to comparable houses sold in the same neighborhood.

Whether a license agreement is comparable to the license under the hypothetical-license scenario depends on many factors. These factors may include whether the other license involves comparable technologies, comparable economic circumstances, comparable structure, and comparable scope.

If there are differences between a license agreement and the hypothetical license, you must take those into account when you make your reasonable royalty determination.

The hypothetical license is deemed to be a voluntary agreement.

**Authority:** Fed. Cir. Bar Association Model Patent Jury Instructions B.5.9 (2020).

1

2

## FINAL INSTRUCTION NO. ___

## DAMAGES – APPORTIONMENT

3

4

5

6

7

8

9

10

11

The amount you find as damages must be based on the value attributable to the patented invention, as distinct from unpatented features or other factors such as marketing or advertising, or Medtronic CoreValve's size or market position. A royalty compensating the patent holder for damages must reflect the value attributable to the infringing features, and no more. The process of separating the value of the allegedly infringing features from the value of all other features is called apportionment. When a product used to practice a method has both patented and unpatented features, your award must be apportioned so that it is based only on the value of using the patented features, and no more.

12

13

14

15

16

17

18

Sometimes, damages calculations may be based on comparable license agreements that reflect "built-in" apportionment, that is to say, license agreements that account for the economic circumstances of the parties, that reflect the market's actual valuation of the patent, and that assume the negotiators of the license settled on a royalty rate and royalty base combination or a lump sum embodying the value of the asserted patent. It is up to you decide whether any alleged comparable agreements in this case include such "built-in" apportionment.

19

20

21

22

23

24

**Authority:** Fed. Cir. Bar Association Model Patent Jury Instructions B.5.12 (2020); *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226–27 (Fed. Cir. 2014); *Vectura Ltd. v. GlaxoSmithKline LLC*, 981 F.3d 1030, 1040-41 (Fed. Cir. 2020); *Niazi Licensing Corp. v. St. Jude Med. S.C.*, 30 F.4th 1339, 1357 (Fed. Cir. 2022).

25

26

27

28

**FINAL INSTRUCTION NO. ___**

**REASONABLE ROYALTY – AVAILABILITY OF NON-INFRINGING SUBSTITUTES**

In determining a reasonable royalty, you may also consider evidence concerning the availability and cost of any acceptable non-infringing alternatives to the patented invention that were available at the time of the hypothetical negotiation. An acceptable substitute must be a product that is licensed under the patent or that does not infringe the patent.


**Authority:** AIPLA Model Patent Jury Instructions V.10.2.1.4, 10.2.5.8 (2019); *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1334–35 (Fed. Cir. 2015); *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1373 (Fed. Cir. 2008); *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1349, 1351–52 (Fed. Cir. 1999); *Pavo Soln. LLC v. Kingston Tech. Co.*, No. 8:14-cv-01352, 2019 WL 8138163, at *20–21 (C.D. Cal. Nov. 20, 2019); *Open Text S.A. v. Box, Inc., No. 13-cv-04910-JD*, 2015 U.S. Dist. LEXIS 11318, at *13 (N.D. Cal. Jan. 29, 2015); N.D. Cal. Model Patent Jury Instruction, 5.7.

**FINAL INSTRUCTION NO. ___**

**DUTY TO DELIBERATE**

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in Court.

You shall diligently strive to reach agreement with all the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right, or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

**Authority:** 9th Cir. Civ. Jury Instructions 3.1 (2021).

1    **FINAL INSTRUCTION NO. ___**

2    **CONSIDERATION OF EVIDENCE – CONDUCT OF THE JURY**

3       Because you must base your verdict only on the evidence received in the case

4 and on these instructions, I remind you that you must not be exposed to any other

5 information about the case or to the issues it involves. Except for discussing the case

6 with your fellow jurors during your deliberations:

7       Do not communicate with anyone in any way and do not let anyone else

8 communicate with you in any way about the merits of the case or anything to do with

9 it. This includes discussing the case in person, in writing, by phone, tablet, computer,

10 or any other means, via email, via text messaging, or any internet chat room, blog,

11 website or application, including but not limited to Facebook, YouTube, Twitter,

12 Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media. This

13 applies to communicating with your family members, your employer, the media or

14 press, and the people involved in the trial. If you are asked or approached in any way

15 about your jury service or anything about this case, you must respond that you have

16 been ordered not to discuss the matter and to report the contact to the court.

17       Do not read, watch, or listen to any news or media accounts or commentary

18 about the case or anything to do with it; do not do any research, such as consulting

19 dictionaries, searching the Internet, or using other reference materials; and do not

20 make any investigation or in any other way try to learn about the case on your own.

21 Do not visit or view any place discussed in this case, and do not use Internet programs

22 or other devices to search for or view any place discussed during the trial.  Also, do

23 not do any research about this case, the law, or the people involved—including the

24 parties, the witnesses, or the lawyers—until you have been excused as jurors. If you

25 happen to read or hear anything touching on this case in the media, turn away and

26 report it to me as soon as possible.

27       These rules protect each party's right to have this case decided only on

28 evidence that has been presented here in court. Witnesses here in court take an oath

to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete, or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over. If any juror is exposed to any outside information, please notify the court immediately.

1
2

**FINAL INSTRUCTION NO. ___**

**COMMUNICATION WITH COURT**

3      If it becomes necessary during your deliberations to communicate with me,

4 you may send a note through the clerk, signed by any one or more of you. No member

5 of the jury should ever attempt to communicate with me except by a signed writing.

6 I will not communicate with any member of the jury on anything concerning the case

7 except in writing or here in open Court. If you send out a question, I will consult with

8 the lawyers before answering it, which may take some time. You may continue your

9 deliberations while waiting for the answer to any question. Remember that you are

10 not to tell anyone—including the Court—how the jury stands, whether in terms of

11 vote count or otherwise, until after you have reached a unanimous verdict or have

12 been discharged.

13

14      **Authority:** 9th Cir. Civ. Jury Instructions 3.3 (2021).

15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FINAL INSTRUCTION NO. ___**

**RETURN OF VERDICT**

A verdict form has been prepared for you. After you have reached unanimous agreement on a verdict, your presiding juror should complete the verdict form according to your deliberations, sign and date it, and advise the clerk that you are ready to return to the courtroom.

**Authority:** 9th Cir. Civ. Jury Instructions 3.5 (2021).